PETITION of HALSEY J. BOARDMAN *et al.* for an Opinion of the Court.

A testate estate should be so administered, if it is legally possible, as to carry out the testator's purposes manifested in the will.

The circumstances under which a testator wrote should be considered in construing the testament, especially when the structure of the instrument is loose, the instrument ambiguous, and the circumstances peculiar.

If the indications from the testator's circumstances comport with the indications from the will as a whole, the will will be construed in accordance with these indications.

A testator directed the payment of his debts as soon as practicable, made divers specific legacies, ordered the sale of his household and stable effects within two years, the proceeds, together with all moneys on hand at his death, to be applied to the payment of debts and legacies, and any excess to be added to the trust estate created as follows :

"Item 19th. I give and devise all the rest and residue of my property and estate of every nature and kind to H. J. B. and E. H. W. . . . In special trust and confidence, nevertheless, that the said B. and W. as trustees will use and apply the same to the best advantage for carrying out and accomplishing the objects set forth in this my last will and testament; that is to say, that the said trustees shall sell, at such time and in such manner as they deem most advantageous, all real estate to which I hold title, and all stocks or interests in any and all corporations, companies, or partnerships in which I have any stock or interest of any kind, except my interest or stock in the Rumford Chemical Works, which sales, and all necessary and legal transfers and conveyances of any and all property so sold, the said trustees are hereby authorized and empowered to make. It being, however, my will and direction that the interest and rights of said trustees as aforesaid shall be subordinate to the payment of all my debts, the legacies herein provided for, and the annuities given for the period occupied in the administration of my estate by said executors.

"Item 20th. At the expiration whereof I will and direct my said trustees to continue the payment to each of my daughters . . . the income accruing from fifty shares of stock of said Rumford Chemical Works during their respective natural lives, which income I hereby give and bequeath to them severally.

"Item 21st. After the payments of the foregoing legacies, bequests, and annuities, and

the payment annually to each of my said sons the sum of five thousand dollars, which I direct to be paid to them until the legacies hereinafter provided for are satisfied, I direct my said trustees to divide the dividends accruing upon my said stock in the Rumford Chem-. ical Works, one half of said dividends to be held by said E. H. W. in trust until the aggregate reaches the sum of one hundred thousand dollars, when the same shall be paid over to the Corporation of Brown University, of Providence, in the State of Rhode Island aforesaid, for the 'purpose of endowing a professorship or erecting a building for use in connection with said University, as to my said trustees shall seem most desirable, the same to be known and called the Wilson Professorship or the Wilson Hall.

" And the other half of said dividends shall be held by said H. J. B. in trust until the aggregate shall reach the sum of fifty thousand dollars, when the same shall be paid over by him to the Corporation of Dartmouth College, of Hanover, in the State of New Hampshire, for the like purposes, with like discretion to my said trustees, and subject to the like provision as to the connection of my name therewith. And it is my wish that in the event of a building being decided upon in either or both of the two last named legacies, by my said trustees in the application thereof, that, in the erection thereof, there shall be built into said building over its principal entrance a block of Cumberland granite bearing in plain letters the word 'Wilson.'

"Item 22d. After the payment of the foregoing legacies, bequests, and annuities, and all the expenses of said executorship and trusteeships, including a suitable compensation to said executors and trustees, I direct my said trustees to pay over annually in equal proportions to my said sons, or, in the event of the death of either, to the survivor and the heirs of the deceased by right of representation, the balance of the income from said stock, and, upon the death of the survivor, said trustees shall divide said stock into as many equal parts as may be necessary, and convey one part to each of my said daughters then living, and one to the children of each of my deceased children by right of representation, or to their lawful guardians in the event of their minority."

The will bore date a week before the testator's death. When it was executed all the testator's Rumford Chemical Works stock had been transferred to trustees to pay his debts from its dividends, a result accomplished soon after the will was proved.

*Held,* that after the exhaustion of the other assets of the estate not specifically bequeathed, such debts, legacies, and annuities as were unpaid should be paid from the dividends of the Rumford Chemical Works stock, and not from the proceeds of a sale of the stock itself, or of a part thereof.

CASE STATED for an opinion of the court under Pub. Stat. R. I. cap. 192, § 23.

The last will of George F. Wilson, late of East Providence, as presented for proof before the probate court of that town, is as follows : —

"KNOW ALL MEN BY THESE PRESENTS :

" That I, George Francis Wilson, of East Providence, in the State of Rhode Island, being of sound mind and memory, do hereby make and publish my last will and testament in manner and form following, namely :

" Item 1st. I direct my executors hereinafter named, as soon as practicable after my decease, to pay all my lawful debts, including funeral expenses, and to erect a suitable monument to mark my last resting place.

" Item 2d.   I give and bequeath to my son, Ellery H. Wilson, my gold hunting case Jurgensen watch, No. 12,228, and the gold chain attached thereto.

" Item 3d.   I give and bequeath to my son, George F. Wilson, Jr., my gold hunting case chronometer watch, made by Jurgensen, No. 6,341, and the gold chain and key attached thereto.

" Item 4th.   I give and bequeath to my daughter, Clara Frances Penny, my pianoforte.

" Item 5th.   I give and bequeath to my daughter, Mary Augusta Wilson, my silver ware and spectroscope, together with the photographs bought with it, and also my portrait of myself in oil, painted by Thomas Robinson.

" Item 6th.   I give and bequeath to my daughter, Alice Louise Wilson, all my paintings and engravings except my cattle pieces and those herein otherwise disposed of, and also the silver watch that was given me by my father and the chain attached thereto, and I request her to give said watch and chain, at such time as she shall see fit, to the first male child of either of her brothers or sisters or her own, and, in default of such designation by her, to the one who may be designated by my executors hereinafter named.

" Item 7th.   I give and bequeath to my daughter in law, Mary Augusta Wilson, wife of Ellery H. Wilson, my Queen's Prize Placque, painted by Coleman.

" Item 8th.   I give and bequeath to my friend, Christine Hood, my copy of the Bible illustrated by Doré, and also the sum of one thousand dollars.

" Item 9th.   I give and bequeath to my friend, Henry Stockbridge, of Baltimore, Maryland, my microscope and the sum of five thousand dollars ; and in case of the death of said Henry Stockbridge before the receipt by him of this legacy, I give and bequeath the same to his heirs.

" Item 10th.   I give and bequeath to my friend, Joseph A. Tucker, of the city of Boston, the Moose Head, now over my writing desk in my Library, and also the sum of five thousand dollars.

" Item 11th.   I give and bequeath to my executors hereinafter named the sum of fifteen hundred dollars, or so much thereof as my said executors shall see fit to employ for that purpose, in

trust, for the erection of a suitable monument to mark the last resting place of my Grandfather, John Wilson, and his wife, my Grandmother, and my Aunt Lucretia Wilson in the burying-ground in East Providence aforesaid, formerly a part of Seekonk, which lot is marked by granite stones at the corners.

" Item 12th.   I give and bequeath to my friend, Mrs. Jane H. Everett, my cabinet for illustrated books, and the picture stand or frame, together with such and so many illustrated books as she may select from my books not otherwise disposed of.   Also the gold ring presented me by her at Christmas, 1873.   And also the sum of thirty-five hundred dollars per annum to be paid to her as an annuity during her life.   I also give and bequeath to the said Mrs. Everett all my clothing of every description, in trust for her to divide and distribute the same, according to her best discretion, among my poorest and most deserving workmen.

" Item 13th.   I give and bequeath to my sister, Mrs. Hannah Holbrook, the sum of one thousand dollars per annum during her life.

" Item 14th.   I give and bequeath all the rest and remainder of my books, maps, charts, photographs, pictures, bronzes, statuary, theodolite, level, and other surveying instruments, drawing instruments, ornaments, and other articles of the classes named in this devise or of a similar nature, to all my children who will accept the same and share in this devise, to be divided by my executors hereinafter named as nearly as may be into parts of equal value for each of said children, and, so far as may conveniently be done, in such a way as shall be most agreeable to my said children, and distributed and delivered over by my said executors to them.

" Item 15th.   I give and bequeath all my household goods and furniture not otherwise disposed of to my son, Ellery H. Wilson, and direct that he shall keep them if possible during his life at my house in said East Providence, provided, however, that so keeping them is not attended by inconvenience or loss to him.

"Item 16th.   I will and direct that my executors shall take all my books of account, memorandum books, memoranda, letters, copies of letters, and receipts, and all things of a similar nature, and hold the same so long as the same can be of any service in the adjustment and settlement of my estate, and when of no further use for that purpose the same shall be disposed of as my said executors may think proper.

" Item 17th. I will and direct that the foregoing bequest sshall take effect immediately upon my decease, and the articles specifically devised to be delivered over at once to the persons to whom they are so devised respectively, and the sums of money, except the annuities, be paid by my executors as soon as practicable after my decease, and the annuities specified herein be paid promptly and without any abatement or discount on the days they from time to time become due respectively.

" Item 18th. I will and direct that my household effects not hereinbefore disposed of, including my horses, carriages, wagons, phætons, sleighs, robes, saddles, and all personal property appurtenant to my horses and stables, shall be sold by my executors, at such place, in such manner, and at such time, not exceeding two years after my decease, as shall seem to my executors most advantageous and desirable, and my said executors shall apply the proceeds of such sale or sales, together with all moneys on hand or in bank at the time of my decease, so far as may be necessary for the purpose, to the payment of any debts by me owing at the time of my decease and of the legacies hereinbefore contained, the excess of such moneys or proceeds, if any, after such payments, to be added to and constitute part of the estate hereinafter disposed of.

" Item 19th. I give and devise all the rest and residue of my property and estate of every nature and kind to Halsey J. Boardman, of Boston, in the State of Massachusetts, and Ellery H. Wilson, of said East Providence, and in the event of a vacancy, occasioned either by death or otherwise, I nominate and appoint my son, George F. Wilson, Jr., as successor or substitute to fill such vacancy. In special trust and confidence nevertheless, that the said Boardman and Wilson as trustees will use and apply the same to the best advantage for carrying out and accomplishing the objects set forth in this my last will and testament ; that is to say, that the said trustees shall sell at such time and in such manner as they deem most advantageous all real estate to which I hold title, and all stocks or interests in any and all corporations, companies, or partnerships, in which I have any stock or interest of any kind, — except my interest or stock in the Rumford Chemical Works, — which sales, and all necessary and legal transfers

and conveyances of any and all property so sold, the said trustees are hereby authorized and empowered to make. It being, however, my will and direction that the interest and rights of said trustees as aforesaid shall be subordinate to the payment of all my debts, the legacies herein provided for, and the annuities given for the period occupied in the administration of my estate by said executors.

"Item 20th. At the expiration whereof I will and direct my said trustees to continue the payment to each of my daughters, Clara Francis, Mary Augusta, and Alice Louise, the income accruing from fifty shares of stock of said Rumford Chemical Works during their respective natural lives, which income I hereby give and bequeath to them severally.

"Item 21st. After the payments of the foregoing legacies, bequests, and annuities, and the payment annually to each of my said sons, Ellery H. and George F., Jr., the sum of five thousand dollars, which I direct to be paid to them until the legacies hereinafter provided for are satisfied, I direct my said trustees to divide the dividends accruing upon my said stock in the Rumford Chemical Works, one half of said dividends to be held by said Ellery H. Wilson in trust until the aggregate reaches the sum of one hundred thousand dollars ($100,000), when the same shall be paid over to the corporation of Brown University of Providence, in the State of Rhode Island aforesaid, for the purpose of endowing a professorship or erecting a building for use in connection with said University, as to my said trustees shall seem most desirable, the same to be known and called the Wilson Professorship, or the Wilson Hall.

"And the other half of said dividends shall be held by said Halsey J. Boardman in trust until the aggregate shall reach the sum of fifty thousand dollars ($50,000), when the same shall be paid over by him to the Corporation of Dartmouth College of Hanover, in the State of New Hampshire, for the like purposes, with like discretion to my said trustees, and subject to the like provision as to the connection of my name therewith. And it is my wish that, in the event of a building being decided on in either or both of the two last named legacies, by my said trustees in the application thereof, there shall be built into said build-

ing over its principal entrance a block of Cumberland granite bearing in plain letters the word ' Wilson.'

"Item 22d. After the payment of the foregoing legacies, bequests, and annuities, and all the expenses of said executorship and trusteeships, including a suitable compensation to said executors and trustees, I direct my said trustees to pay over annually in equal proportions to my said sons, or, in the event of the death of either, to the survivor and the heirs of the deceased by right of representation, the balance of the income from said stock, and upon the death of the survivor said trustee shall divide said stock into as many equal parts as may be necessary, and convey one part to each of my said daughters then living, and one to the children of each of my deceased children by right of representation, or to their lawful guardians in the event of their minority.

"And I hereby constitute and appoint Halsey J. Boardman, of Boston, aforesaid, and the said Ellery H. Wilson, to be the executors hereof, and I direct that they shall not be required to furnish sureties upon their official bonds, hereby revoking all former wills made by me, and ratifying and affirming this and none other to be my last will and testament.

"In witness whereof I hereto subscribe my name and affix my seal this twelfth day of January, A. D. 1883.

"GEORGE FRANCIS WILSON.

"Signed, sealed, published, and declared to be his last will and testament, by said George Francis Wilson, this 12th day of January, A. D. 1883, in our presence, who in his presence and at his request, and in the presence of each other, do hereto subscribe our names as witnesses thereof.

"CHARLES H. COREY,
"HENRY A. GREENE,
"JAMES MARSHALL."

From the decree of the probate court allowing this will an appeal was taken to this court, and the will was finally allowed and approved in this court, with the following modifications sanctioned by a decree[1] entered April 28, 1883, in the equity case, Providence County, No. 2123, *Penny et al* v. *Boardman et als.* :

[1] As provided by Pub. Laws R. I. cap. 204, §§ 1, 4, of April 19, 1882, as follows :

" Whereas there is now pending, in the Supreme Court in this State for Providence County, an appeal from the probate of the will of the late George F. Wilson, of East Providence, in said State,

" And whereas the parties in interest under said will deem it for the best interest of all parties concerned, and hereby agree to make the following compromise and modification of the provisions of said will, namely : That each of said George F. Wilson's daughters, namely, Clara Francis, Mary Augusta, and Alice Louise, shall have the income of an additional hundred shares of the Rumford Chemical Works stock, making one hundred and fifty shares instead of fifty shares as provided in said will, during their respective natural lives ; the dividends from said additional hundred shares of stock to be paid over to them from time to time, as they shall be declared, not commencing, however, until after the legacies and bequests contained and provided for, in said will, to Brown University and Dartmouth College are first paid and adjusted, and also that the income on said fifty (50) shares of stock to each of his daughters, provided in item 20 of said Wilson's will, shall be paid over to said daughters from time to time as they shall be declared, commencing from the decease of said George F. Wilson.

" Sect. 1.   The Supreme Court, sitting in equity, may authorize the persons named as executors in any instrument purporting to be the last will and testament of any person deceased, at any time before a final decree approving said instrument as the will of such deceased person shall have been entered, to adjust by arbitration or compromise any controversy that may exist, or may arise thereon between the persons claiming as devisees or legatees under such will, and those persons entitled to the estate of the deceased under the statutes regulating the descent and distribution of intestate estates ; to which arbitration or compromise the persons named as executors, those claiming as devisees or legatees, and those claiming the estate as intestate, shall be parties ; and such arbitration or compromise shall not affect the rights of persons who were not parties thereto.

" Sect. 4.   Any award or compromise made in writing in such case shall, if found by the court under the circumstances to be just and reasonable in relation to the parties in being, and to its effects upon any future contingent interests that might arise under such will and any gifts to charities made in the same, be valid and binding upon such contingent interests and gifts as well as upon the interests of all persons in being."

" That in all other respects, and subject to the above amendment, said will is to stand in all respects.

" Witness our hands this 13th day of April, A. D. 1883.

| | |
|---|---|
| " Executed in<br>presence of<br>STEPHEN H. TYNG,<br>to all the first four, | HALSEY J. BOARDMAN, Ex. & Tr.<br>E. H. WILSON, Ex. & Tr.<br>E. H. WILSON.<br>GEO. F. WILSON.<br>MARY AUGUSTA WILSON. |
| MINNIE E. PENNY, witness to signatures of ARTHUR and CLARA PENNY. | CLARA FRANCIS PENNY.<br>ARTHUR W. PENNY.<br>HENRY STOCKBRIDGE. |
| C. W. GILMORE, witness to signature of | CHRISTINE HOOD. |
| JAMES HOOD, witness to signature of | JENNIE H. EVERETT. |
| JAMES J. CROSSLEY, witness to signature of | J. A. TUCKER. |
| MATTHEW DOLAN. | DARTMOUTH COLLEGE,<br>By its Att'y, H. J. BOARDMAN.<br>BROWN UNIVERSITY,<br>A. B. CHACE, Tr. |
| CORA E. ALDRICH, witness to signature of | HANNAH C. HOLBROOK. |
| In presence of<br>NEWTON D. ARNOLD, | ALICE LOUISE WILSON." |

" PROVIDENCE, SC.                    SUPREME COURT,
                                    March Term, 1883.

" IN RE WILL OF GEORGE F. WILSON.

" This cause came on to be heard at the aforesaid term before the court, and thereupon and upon consideration thereof, and of the evidence adduced therein, it was adjudged, ordered, and decreed, That the decree of the Probate Court of the town of East Providence, therein appealed from, entered on the 24th day of February, 1883, be and the same is hereby confirmed, and that the instrument in writing therein referred to, bearing date on the 12th day of January, A. D. 1883, is hereby allowed, approved,

and established as the last will and testament of the said George
F. Wilson, late of said East Providence, deceased, subject to and
controlled by the modifications of and in the agreement of com-
promise authorized and approved by the decree entered in the
Supreme Court for the County of Providence, on the 28th day of
April, 1883, in the cause in equity numbered 2123 between the
same parties.    And that a copy of this decree, attested by the
clerk of this court, of and under the seal of this court, be re-
turned to and filed in and recorded in said Probate Court of East
Providence.    Entered as the decree of court, 27th day M. T.
1883, April 28, 1883.
                 " By order,              CHARLES BLAKE, *Clerk*."

*February* 11, 1888.  DURFEE, C. J.   The case stated shows
that the testator, George F. Wilson, died January 19, 1883, leav-
ing a will which was admitted to probate after modification under
the statute by compromise between the parties in interest.  Halsey
J. Boardman, of Boston, and Ellery H. Wilson, a son of the testa-
tor, were appointed executors by the will, and have accepted the
appointment.  The will bears date of January 12, 1883, seven days
before the testator died.  It contains twenty - two items.  The
first item directs the executors as soon as practicable to pay the
debts and funeral expenses, and to erect a monument to the tes-
tator.   Then follow items bequeathing specific chattels to differ-
ent persons, giving two legacies of $5,000 each and one of $1,000,
making $11,000 ; giving annuities for life of $3,500 to one person
and $1,000 to another ; and appropriating the sum of $1,500 for
the erection of a monument to the testator's grandparents and
aunt.   The 17th item directs that the said bequests shall take
effect immediately, that the articles specifically bequeathed shall
be delivered immediately, that the pecuniary legacies shall be
paid as soon as practicable, and the annuities shall be promptly
paid as they become due.   The 18th item directs the sale of the
testator's household effects, not bequeathed, together with his
horses, carriages, etc., and all personal property appurtenant to
his horses and stables, by his executors within two years, and the
application of the proceeds, together with all moneys on hand or
in bank at the testator's decease, to the payment of the debts and

legacies before mentioned, the excess, if any, to be added to the trust estate provided for and disposed of in the remaining items of the will.[1]

The case also shows that for some years before his death the testator was pecuniarily embarrassed, and that on September 14, 1880, being largely indebted to the Rumford Chemical Works, and desiring further advances from it, he transferred all his stock, amounting to 1,248 shares, in said Works, to trustees as security for said indebtedness, and for any further advances made by the Works to him or to Newton D. Arnold, trustee under another deed of the same date, for the settlement of his debts. By virtue of said transfer and deed the testator conveyed nearly all his property to trustees, who at the time of his death held it under said transfer and deed subject to the trusts therein created. The testator was still largely indebted to the Rumford Chemical Works at the time of his death, and the dividends accruing on his 1,248 shares of stock therein continued to be received and applied under said transfer and deed up to and including dividends payable April 30, 1883. On September 15, 1883, said trustees transferred said 1,248 shares to Halsey J. Boardman and Ellery H. Wilson as trustees under the will, and said Arnold conveyed to them the remainder of the trust estate in his hands, and paid over to them as trustees and executors the sum of             dollars, being the residue of dividends accruing after the testator's death after paying the remaining indebtedness to said Works.

The case further shows that the entire estate left by the testator, exclusive of his 1,248 shares of Rumford Chemical Works stock, was insufficient to pay simply his debts, but that, including those shares, it was sufficient to pay the debts and satisfy all the provisions of the will.

The first question put on the case stated is, whether it was the duty of the executors and trustees to apply at once all the dividends and income of the 1,248 shares which accrued or became payable after the testator's decease, less the income of 150 shares payable to his daughters, toward the payment of the legacies to Brown University and Dartmouth College. The question is raised

---

[1] The opinion here recited the remaining items, but as the will is printed above in full, the reporter omits them.

by the daughters, who are interested to have those legacies paid as soon as possible, since the sooner those legacies are paid the sooner they will become entitled to the dividends on the additional shares under the compromise. The question, however, is not, so far as we see, affected by the compromise, and should be decided precisely as it would have been decided for the colleges if no compromise had been made.

The contention for the daughters is, that it is or was the duty of the executors to sell all the real and personal estate not specifically bequeathed, except the 1,248 shares, and then, if the proceeds are insufficient, to sell so many of said shares as are required to make up the deficiency, in order to carry out the following course of administration, to wit: (1) To pay the costs and charges of administration; (2) to pay the expenses of the last sickness, funeral, and monument; (3) to pay all lawful debts; (4) to distribute the articles specifically bequeathed and pay the pecuniary legacies; (5) to pay not over $1,500 for a monument to the testator's grandparents; (6) to provide for and pay the annuities of $3,500 and $1,000; and (7) to turn over the residue to the trustees. Such a course of administration is proper if it best comports with the provisions of the will, otherwise not. There is no stereotyped rule for administering testate estates. Every such estate should be so administered, if possible consistently with the law, as to carry out the purposes of the testator, as those purposes appear from the will interpreted as a whole in the light of the circumstances in which it was made.

The same persons are executors of the will and trustees under it, and it seems to us that its obscurity arises in part from the fact that the draughtsman of the will has not always observed the distinction between their capacities, but has sometimes confused and intermixed them so that it is impossible to discern clearly where the functions of the executors were intended to end and those of the trustees to begin. The will nowhere empowers the executors as such to sell the real estate, but empowers and directs the trustees to sell it for the accomplishment of the objects of the will, so that even for the payment of debts the executors could only sell it under the will as trustees. It is the trustees also who are empowered and directed to sell all " stocks or interests in any and

all corporations, companies, or partnerships," except the Rumford Chemical Works, not simply for the purposes of the special trust, but "for carrying out and accomplishing the objects in this my last will," though these "stocks or interests" are plainly personal assets, and the executors as such would ordinarily be expected to administer them for all purposes except those of the special residuary trust. At this point it seems to have occurred to the testator, or his draughtsman, that there might be some confusion, and the testator adds that it is his will that the interest and rights of the trustees shall be subordinate to the payment of debts and legacies and the annuities "for the period occupied in the administration of my estate by said executors," manifestly implying that, at least after said "period," the annuities, if paid at all, were to be paid by the trustees. It seems clear to us, therefore, that there is a looseness and lack of order in the structure of the will which should be constantly taken into the account in construing its provisions.

The counsel for the daughters does not include the sums of $5,000, which are payable to each of the sons annually under the 21st item of the will, among the sums which are to be paid by the executors according to his final scheme of administration stated above, but admits that the trustees, after paying the income of fifty shares to each daughter, are to pay said annual sums, while the college legacies are accumulating, either from the principal or the income of the stock. We have just seen, too, that the closing sentence of the 19th item implies that the annuities previously given are to be paid out of the income after the period of administration. If we pass to the 21st item, it seems to us that both of these points are clear. The 21st item begins: "After the payments of the foregoing legacies, bequests, and annuities, and the payment annually to each of my said sons, Ellery H. and George F. Jun., which I direct to be paid to them until the legacies hereinafter provided for are satisfied, I direct my trustees to divide the dividends accruing upon my said stock in the Rumford Chemical Works," etc., proceeding to prescribe accumulations for the colleges. In other words, to turn the phrases about in order to bring their meaning out the more clearly, the item directs the trustees to divide the dividends between the funds for the colleges *after* paying the legacies, bequests, and annuities given in

prior items, and the annual sums for the sons, the implication being unmistakable that the payments are to come out of the dividends so far as necessary before division. The answer of the counsel for the daughters is, that no such payments ever can be necessary, because in the regular course of administration the legacies, bequests, and annuities will be paid by the executors, so many shares of the Rumford Chemical Works stock as are necessary to make good the deficiency of the other assets being sold for that purpose, and only the residue will go to the trustees. The trouble with this answer is, that it takes no account of the unmethodical structure of the will, and, instead of making the administration subservient to the will, subordinates the will to a preconceived course of administration. It is patent that the testator did contemplate an exigency in which the dividends should be used to pay legacies and annuities, and did explicitly provide for it in the 21st item. What was that exigency ? Evidently an insufficiency of assets, exclusive of chattels specifically bequeathed and of the Rumford Chemical Works stock. If it be asked why exclusive of said stock, the answer is obvious, namely, because, if the stock was intended to be resorted to at all, it must have been intended to be resorted to to the full extent of the need, and the provisions for making any use of the dividends would be nonsensical. Accordingly, since the exigency has occurred, why should it not be met as the testator provided for having it met, and his will thus be carried out ? It seems to us that it should be so met, and consequently that the legacies and annuities, as well as the annual sums for the sons, are payable out of the dividends, and that they should be so paid, the annuities and annual sums of course being paid as they fall due. We may add that the 22d item, also, will be found, if examined, to lead to the same conclusion.

The counsel for the daughters urges against this conclusion that it is inconsistent with item 17, which directs the immediate payment of the legacies. Item 18, however, allows the executor two years for payment thereunder ; and probably the principal effect intended by item 17 was to entitle the legatees to interest from the death, instead of a year after the death, of the testator in case of delay. He also urges that the testator could not have intended to postpone his children's enjoyment of the income by such postponement. The answer to this is, that, under the will simply, the

daughters are not affected by the postponement, being entitled to the income of fifty shares each from the testator's death, and the sons are provided for by the annual sums.

Are the dividends likewise applicable to the payment of the debts in so far as the other assets not specifically bequeathed, except the 1,248 shares, fall short of paying them? The will does not expressly provide for the payment of the debts, as it does of the legacies, out of the dividends, and it therefore seems to us that this is a more difficult question than that which we have just answered. We have, however, after careful consideration, come to the conclusion that the dividends are to be used in exoneration of the shares as well for the payment of debts as of legacies and annuities. We will state the reasons which have led us to this conclusion.

We think it is apparent that the testator expected that the Rumford Chemical Works stock would go intact to the trustees. Item 19, as we have seen, directs the trustees to sell all other corporate stocks except that, which of course imports such an expectation. Item 21 directs the manner in which the dividends "accruing upon my said stock in the Rumford Chemical Works" shall be temporarily disposed of. The language is "my said stock," not "my remaining stock," and again imports an expectation that the stock would go and continue intact. The same expectation reappears in the 22d item, which directs the disposition of the income, after the payment of the legacies to the colleges, during the lives of the sons, and the division of the stock itself after the death of the survivor of them, the stock there being called "said stock," meaning the stock previously mentioned. It would evidently disappoint the expectation and purpose of the testator if the stock were broken into for the payment of his debts. The question is, whether the expression of this expectation and purpose is determinate enough to be accepted as the *will* of the testator; for if it is, there appears to be nothing to prevent its controlling the usual course of administration.

It is the duty of a court in construing a will to bear in mind the circumstances under which it was made, so as to look at it, as far as possible, from the testator's point of view. The observance of this duty is particularly important in this case, since the circum-

stances, as they concern the stock in the Rumford Chemical Works, were very peculiar.

The case stated shows that at the time the testator made the will his stock in the Rumford Chemical Works was, and for more than two years had been, in the hands of trustees under a deed which stipulated an extension of credit to the testator on a prior indebtedness to the Rumford Chemical Works, and further loans to him from said Works in consideration that said stock should be held as security, and that said Works, which was a party to the deed, should be entitled to retain the dividends on the stock as they accrued by way of payment. The stock was also complicated and entangled in the trusts of another trust deed of the same date, so that at the death of the testator it would have been hardly practicable for the executors, if they had been qualified, to sell the stock, unless the trustees would have consented to join in the sale, for the purpose of paying the indebtedness to the Works. The case likewise shows that, within a little more than three months after the execution of the will, dividends had accrued to an amount sufficient to pay off the entire residue of indebtedness for which the stock was held, and to leave a large balance to be paid over to the executors. It must be assumed that the testator knew when he made his will how much his indebtedness was, and how profitable a business the Works was doing, and consequently how soon the indebtedness was likely to be paid out of the accruing dividends. Can it be supposed that, with this knowledge, he intended that the process of payment, which he had found so successful during his life, should cease at his death? The will shows that he relied almost exclusively on the stock to yield the funds for his monumental benefactions to Brown University and Dartmouth College, and to make provision for his children and their posterity. Can it be supposed that he intended to expose this productive stock to the hazards of a sale in circumstances in which some sacrifice, and probably a heavy sacrifice, must ensue, for the purpose of paying a debt which the stock was itself paying rapidly and without risk, as he had agreed to have it paid? It is strange, if he did so intend, that the will should indicate the contrary. It is not to be supposed that in making the will, which was made only seven days before his death, he did not contemplate the contingency of his dying before his indebtedness to the

Works was paid. But if his idea was that, whether he lived or died, the indebtedness would disappear under the deeds of trust without the intervention of the executors, and if such was his design,·then the suggestion of the 18th item, that the debts and legacies might be more than paid by the property there directed to be sold, would become intelligible, and the apparent purposes of the will are all satisfied. In this view the testator did not provide in his will, in express terms, that his debts, after the exhaustion of other assets, should be paid out of the dividends instead of the capital of the stock in the Rumford Chemical Works, because he had already so provided in regard to the bulk of his indebtedness before the will was made, and because he supposed that, in such circumstances, he made his intention not to have this capital so used sufficiently clear by directing it to be used in a different manner. And in this view, also, the probability is that, when he ordered in item 18 the effects there specified to be sold and the proceeds used to pay debts and legacies, and the excess, if any, turned over to the trustees, he had chiefly in mind his personal and family debts not embraced in the ante-testamentary provisions.

It seems to us, therefore, that the indications from the circum-stances concur completely with the indications of the will, and add such strength to the latter indications that the latter are to be regarded as a determinate part of the will, and accordingly that the debts, so far as the other available assets fall short, are properly paid out of the dividends instead of the *corpus* of the Rumford Chemical stock.

The counsel for the daughters contends that this view is inconsistent with the direction of item 1, that the debts shall be paid as soon as practicable. The phrase " as soon as practicable" is rather indefinite ; but, however taken, the debts were paid, as the testator probably foresaw they would be, a good deal quicker out of the dividends than they would have been by selling the stock. The record shows that the will was finally proved April 28, only two days before the dividend of April 30, so that in fact it would have been impossible for the executors to hasten the payment by sale.

We wish to add that in coming to our conclusions we do not mean to derogate from the authority of the ordinary precedents,

or of the general rules educed from them, namely, that, where a legacy is given which is subject to a charge, it is ordinarily entitled to exoneration out of the general assets, and that when a residue is given, the income to go one way and the capital another, the legatee of the income takes it from the death, unless there be something in the will to show a contrary intent. Both these rules are recognized in Rhode Island cases. *Gould* v. *Winthrop*, 5 R. I. 319 ; *Bailey, Petitioner*, 13 R. I. 543. We know of no precedent which covers a case having the peculiarities of the case at bar. Nor do we acknowledge any conflict between our decision in this case and the decision of this court in *Wolcott* v. *Pitcher et als.* 7 R. I. 555, largely relied on by the counsel for the daughters ; for in that case the will was supposed to indicate an intent to have the capital of the residue used, and it does not appear that there was anything to the contrary in the circumstances, whereas in the case at bar the will implies an intent to have the capital preserved and only the dividends used, and the circumstances under which the will was made corroborate the implication.

Other questions have been put in the case stated, but the answers to them are mere corollaries to the answers above given, and we leave the parties to draw them.

*Thomas H. Russell*, for Clara F. Penny, Mary A. Wilson, and Alice L. Wilson, daughters of the testator.

*James M. Ripley & John F. Lonsdale*, for the other petitioners.