ROBERT L. BOWEN *et al.* FOR AN OPINION.

JULY 14, 1942.

PRESENT: Flynn, C. J., Moss, Capotosto, Baker and Condon, JJ.

BAKER, J. This is a petition for an opinion filed in this court under the provisions of general laws 1938, chapter 528, § 20.

The petitioners having adversary interests are the present trustees under the will of Richard Waterman and the attorney general of the state, who represents the public as beneficiaries of a certain charitable trust created by said will. The petitioners concur in stating four questions relating to the construction of said will and a codicil thereto as a special case for the opinion of this court.

Richard Waterman died in the town of Coventry in this state in 1847 leaving a will, dated March 12, 1831, and a codicil thereto, dated November 2, 1838. His will contained the following provision: "Third. I order that my executors, hereinafter named shall, as soon as may be after my decease, invest in some good bank in the town of Providence five hundred dollars in stock at par, the same to remain a permanent fund, the interest of which to pay a Minister of the Gospel, of the Calvinistic Baptist order, who shall preach, at least, two sundays in a month, within two miles of the house where I now live." He then appointed his three executors thereinafter named to be the trustees of said fund.

In his said codicil he used the following language with reference to said fund: "And whereas in my said last will and testament I bequeathed five hundred Dollars to be invested in bank stock the interest of which is to be paid annually to a Calvinistic Baptist Minister who shall Preach within two miles of my dwelling house now it is my will that if on any year or years there should be no such minister as above described who shall preach within the limit therein described that the interest arising on said legacy shall be invested in Bank Stock thereby to form an increasing fund to be appropriated in the same manner as the original legacy is in my last will and testament directed."

It appears from the petition that the trustees under said will and their successors invested said fund in the stock of state and national banks located in Providence, and now have in their possession, as the *corpus* of said trust, bank stock and bank deposits of the approximate value of $54,000, and that they carried out, as far as possible, the other provisions of the trust, but that there is now and for a long time has been an accumulated surplus of income. The petition also states that the present trustees have found it "increasingly difficult to invest to advantage" the said accumulations of income in purchasing the stock of banks in Providence because of the small number of such banks, the small amount of such stock offered for sale, and the high price of such stock when offered, with the result that they have been obliged to deposit in savings banks and in participation accounts in trust companies large sums of money from which little income is derived. It is alleged that said trustees believe that they could better invest such accumulations of income if they were permitted greater freedom in the purchase of securities.

The four questions stated by the said adversary parties, therefore, are as follows: "1. Are the trustees under the terms of said will and codicil permitted to invest the past, present and future accumulations of income of said trust fund in the purchase of stocks of banks located and doing a

banking business outside of the City of Providence? 2. Are the trustees under the terms of said will and codicil permitted to invest said accumulations of income of said trust fund in the purchase of stocks of trust companies located and doing a banking business in the City of Providence? 3. Are the trustees under the terms of said will and codicil permitted to invest the accumulations of income of said trust fund in the purchase of stocks of trust companies located and doing business outside of the City of Providence? 4. Are the trustees under the terms of said will and codicil permitted to invest the accumulations of income of said trust fund in the purchase of such securities as may be authorized by the State of Rhode Island for investment by savings banks?"

The trustees contend that the court should answer all of said questions in the affirmative. The attorney general takes the position that the fourth question should be answered in the negative and that the first three should be answered in the affirmative, provided the bank or trust company in question be within this state. It is clear that our opinion in this case must be based only on a construction of the will and codicil before us. This requires us to ascertain, if possible, from said instruments the intent of the testator as it bears upon the questions propounded. This proceeding is not brought to bring about an application of the doctrine of *cy pres* or something analogous thereto, nor can we, under the facts stated, go beyond the testator's intent as we find it in his testamentary instruments. In construing said instruments it is well settled that they must be read together. *Willoughby* v. *Willoughby*, 66 R. I. 430, 19 A. 2d 857.

It is clear that G. L. 1938, chap. 486, § 10, dealing with the power of trustees to invest and reinvest the trust estate held by them has no application here. That statute took effect on February 1, 1896 and in *Branch* v. *DeWolf*, 28 R. I. 542, it was held that wills probated prior to its passage were not subject to its provisions. Further, it is well settled that the creator of a trust may designate what kind of investment his

trustee shall make both as to principal and accumulated income; and ordinarily the latter will be bound by such directions. It is his duty to follow such specific instructions unless no such investment as directed can be made, the safety of such investment is doubtful, or such investment is of little or no value. 26 R. C. L. 1306, 1307; 65 C. J. 807; 1 Restat. Law of Trusts § 167. See also *Merchants Loan & Trust Co.* v. *Northern Trust Co.,* 250 Ill. 86; *Pell* v. *Mercer,* 14 R. I. 412; *Eldredge* v. *Greene,* 17 R. I. 17.

An examination of the will and codicil before us shows that the testator in his will specifically directed that his bequest of $500 be invested in some good bank in Providence in stock at par, to remain a permanent fund. In our opinion this language unquestionably meant that he intended and directed his executors, who were also his trustees, to set up said permanent fund by purchasing with the said $500 the stock of a good Providence bank at par. This apparently was done.

More than seven years later he executed the codicil in question containing several provisions. The testator's mention of bank stock in the previously-quoted provision of said codicil did not specifically refer to a bank in Providence, but it did specifically refer to the bequest in his will of $500 to be invested in bank stock; and such investment under the will was expressly directed to be made in stock "in some good bank in the town of Providence". Following this reference is the provision setting out the will of the testator, in substance, that if in any year or years the interest on the fund described in his will accumulates or is unused, such interest "shall be invested in Bank Stock thereby to form an increasing fund to be appropriated in the same manner as the original legacy".

It seems obvious that, as a matter of construction, which is the question before us, there are only two possible meanings which reasonably can be given to the part of the codicil in question. Either we must construe the direction broadly as expressing the testator's intent that his trustees be authorized to invest such accumulations of income in the stock

of any bank anywhere, or we must imply in the direction an intent that the investment of such income conforms to the direction in the will itself as to the investment of the principal of the legacy, that is, that such accumulations of income likewise be invested in the stock of good banks in Providence. There is no reference in the will or codicil to banks within the state of Rhode Island only, and in construing said instruments we are not at liberty to read into them such a limitation respecting the testator's directions as to the investment of income.

After a careful consideration of said will and codicil, and reading them together, we are of the opinion that by reasonable implication the testator intended that the unspent income in question should also be invested in the stock of Providence banks. He lived in the vicinity of Providence, undoubtedly was familiar with its banks and evidently had confidence in their soundness. His trustees were his three sons who, in all likelihood, were, in this respect, in the same position as their father. In any event he trusted them to invest his original legacy of $500 in the stock of "some good bank" in Providence. Taking into consideration the dates when the will and codicil were executed, we think it unlikely that the testator intended, by said codicil, to direct or did direct his trustees to invest the unspent income from his legacy in the stock of banks generally. Such a direction would be very broad, and before placing that construction on the language of the codicil, we should be satisfied that such was the testator's intent.

It seems to us more reasonable to hold that in his codicil he was merely stating in general language, with respect to the investing of unspent income, the same intent which he had specifically expressed in his will regarding the investment of his original legacy. In this connection it may be noted that in his codicil, after directing that said income be invested in bank stock, he used the following language: ". . . thereby to form an increasing fund to be appropriated in the same manner as the original legacy". In other words,

the *corpus* of the trust was to be one fund invested in the stock of Providence banks and to be appropriated as above indicated.

We realize that our above finding does not give the trustees as much scope in investing the funds of the trust as they desire or feel to be advantageous. We are, however, bound by what we consider the proper construction of the testator's will and codicil. It has not appeared herein that the funds in question cannot with safety be invested as he has directed so as to yield a fair return under all the conditions at present existing.

The parties have also argued the point as to whether or not trust companies doing a banking business in Providence may be considered to be banks in Providence in connection with the investment of the funds of this trust. Of course, when the will and codicil in question were executed no trust companies were in existence in Providence. However, at the present time, broadly speaking, they are, under our statutes, incorporated in the same manner as banks, have the same general powers and can do the same kind of business. In *Martin* v. *St. Aloysius Church*, 38 R. I. 339, this court cited with approval various definitions of "bank" and "banking". Such definitions would apparently include a trust company doing a banking business. In general the term "bank" has been broadly construed. In *Sterling* v. *Tantum*, 5 Boyce (Del.) 409, the court, after a full discussion of the matter, concluded that a trust company which had been given full banking powers was a bank within the meaning of a Delaware statute respecting attachments.

Upon consideration, we are of the opinion that, under the circumstances, the trustees herein, by the provisions of the will and codicil before us, have authority to invest the funds of said trust in the stock of trust companies in Providence which are actually engaged in doing a banking business. In our judgment they come within the meaning of "bank" as used in said will and codicil. We include the requirement that such trust companies be actually engaged in doing a

banking business because it is possible for corporations organized under the general laws as trust companies to do merely an investment or trust business, without doing a banking business.

We, therefore, answer the first question submitted in the negative; the second question in the affirmative; the third question in the negative; and the fourth question, which in our opinion, suggests a scope of investment which is entirely beyond the directions of the testator in his will and codicil, even under present conditions, in the negative.

A decree for entry may be presented in accordance with this opinion.

*Haslam, Arnold & Sumpter, Charles R. Haslam, Harry A. Tuell,* for trustees.

*John H. Nolan,* Attorney General, *John E. Mullen,* Asst. Attorney General, for State.