CITY BANK FARMERS TRUST COMPANY *et al., Trs. vs.*

REGINALD B. TAYLOR *et al.*

AUGUST 18, 1949.

PRESENT: Flynn, C.J., Capotosto, Baker, Condon and O'Connell, JJ.

130

CONDON, J. This is a bill in equity brought by the trustees for instructions relative to the will of Moses Taylor, late of the town of Portsmouth, deceased. After the cause had been heard on bill, answers and deposition and was ready for hearing for final decree in the superior court, it was certified to this court for determination in accordance with general laws 1938, chapter 545, §7.

Instructions are desired as to the scope of the following provisions of clause Ninth of the will: "Any and all securities and property owned by me at the time of my death may be retained by my executors and trustees and allotted to any of the trusts or shares hereinabove provided for. * * * My executors and trustees may invest and reinvest the funds of my estate and of the trusts hereunder in any real or personal estate and in securities or stocks which they may deem judicious investments, whether or not such investments be of the character prescribed by law for trust investments * * *. I authorize my executors and trustees to participate in the reorganization of any corporation securities or stocks in which may be held by my estate or the trusts hereunder, and take such steps with respect thereto as they may be advised."

Those powers have been relied upon by the executors and trustees since their appointment and qualification following the testator's decease on May 26, 1928 as their authority for retaining in the trust a large number of the shares of the corporate trustee's own stock. The question has now arisen whether such retention was illegal notwithstanding the testamentary grant of powers above quoted.

Edith Bishop Taylor, widow of the testator, and The Farmers' Loan and Trust Company, a banking corporation of New York, were named in the will as executors and trustees. The will was executed on October 25, 1926. Mrs.

Taylor has remarried and is now Edith Bishop Nicholson. The corporate trustee has modified its banking status, changed its name to City Bank Farmers Trust Company and has affiliated with the National City Bank of New York. Both trustees are described by their new names in the bill of complaint which they have brought against the beneficiaries of the trust who, however, have united with the complainants in urging us to hold that the testamentary grant of powers above quoted authorized the retention of the securities in question in the trust. The guardian *ad litem* appointed by the superior court to represent the interests of minors and the contingent interests of persons not in being or not ascertainable takes a like position.

We are thus without the benefit that usually comes from the earnest advocacy of adversary counsel. Complainants argue, however, that the questions to be determined are not moot, because the beneficiaries *sui juris* are desirous that complainants retain the securities in question in the trust and therefore they need the instructions of the court to that end. We have resolved any doubts we may entertain in the matter in favor of that view, and therefore at this time we will determine only those questions which arise as a result of the affiliation of the trust company with the bank.

When the testator executed his will on October 25, 1926 he owned 1600 shares of The Farmers' Loan and Trust Company, hereinafter called the trust company, and 8213 shares of the National City Bank of New York, hereinafter called the bank. Sometime after he had executed his will he transferred 750 shares of the trust company stock to Annandale Farm, Inc., a corporation wholly owned by him, and acquired 1087 additional shares of the stock of the bank. At his death he owned directly 850 shares of the trust company and 9300 shares of the bank and indirectly through Annandale Farm, Inc., 750 shares of the trust company. On December 12, 1928 the estate sold 830 shares of the bank stock thus reducing the number held to 8470 shares. About February 16, 1929 the bank split its

shares on a five for one basis so that thereafter the executors and trustees held 42,350 shares. On March 21, 1929 as executors they reduced that total to 40,000 shares by selling 2350 shares and later by further sales to 32,000 shares. They also sold from June to September 1929, as trustees, 5000 shares and later, on November 10, 1930, repurchased a like amount to the substantial advantage of the trust estate.

In the meantime the trust company and the bank had been negotiating and as a result of those negotiations the trust company agreed to change its name to City Bank Farmers Trust Company and as such to affiliate with the bank in the following manner. The bank was in effect to acquire the shares of the new trust company, except a small number to qualify directors of the trust company, and such shares were to be held by trustees for the *pro rata* benefit of the stockholders of the bank. The stockholders of the trust company agreeing to the affiliation were to receive five shares of new stock of the bank for each share of the trust company. The trust company was thereafter to give up its commercial banking operations in favor of the bank and the bank was to surrender its trust business to the trust company. All stockholders of the trust company accepted this plan of affiliation, turned in their stock and received in exchange five shares of new bank stock for each share of trust company stock. Thereafter the City Bank Farmers Trust Company's stock was held in trust for the benefit of the stockholders of the National City Bank and some of the officers and directors of that bank thereafter became officers and directors of the trust company.

In *City Bank Farmers Trust Co.* v. *Cannon*, 291 N. Y. 125, 131, the court of appeals characterized such affiliation as follows: "Thus there was one group of shareholders who together owned the entire beneficial interest in both companies. Gains and losses of each company affected them all alike, proportionately with the number of Bank shares each of them held. Ownership of these shares was inseparable from *pro rata* beneficial ownership of the trustee's

shares and no one could acquire or dispose of this beneficial interest except by acquiring or disposing of Bank shares." And the court significantly pointed out that when the trustee in that case turned in the old certificates of stock of National City Bank held in the trust and received for them new certificates it thus "acquired as an asset of the trust a substantial beneficial interest in its own stock which could only be sold by selling its shares in the National City Bank with which it was so closely affiliated."

In the face of such a situation brought about by the corporate trustee the court held that thereafter undivided loyalty of the trustee to the trust did not exist, saying: "The officers of the trustee responsible for the administration of the trust were under a duty with unremitting loyalty to serve both the interest of the Trust Company and the interest of the trust estate. These were conflicting interests insofar as the trust investment in the National City Bank shares required decision whether to hold or to sell the shares in a falling market. The sale of this large number of shares might have seriously affected the interests of the Trust Company by depressing the value of these shares in a rapidly deteriorating market. Consequently the trustee had conflicting interests to serve in deciding to sell or not to sell."

In the recent case of *Matter of Durston,* 297 N. Y. 64, 72, the court of appeals followed the reasoning of *City Bank Farmers Trust Co.* v. *Cannon, supra,* and applied it to the following factual situation. Testator appointed three trustees one of whom was a trust company in whose shares the testator held a substantial investment. In his will testator, with reference to the property that he had given them in trust, expressly vested his trustees "with all the authority, and powers in connection with the same, I would possess, if living." The trustees retained the stock of the trust company. Later the company split its stock on the basis of four for one and also increased its capital stock authorizing each stockholder to subscribe for new stock.

The trustees exchanged the old stock which they held for new stock and subscribed for additional new stock in exercise of their rights.

The court held that the retention of the stock of the trust company was not authorized by the testamentary provision. They expressly declined to infer therefrom "that such authority was to be exercised without regard to the fundamental duties and loyalties imposed upon all trustees" and said: "we must construe the language * * * as a grant of wide power and discretion, to be exercised, however, in the manner and subject to the obligations and duties of trustees. If the testator intended that all these things could be done without regard to the fundamental rule of absolute loyalty and fidelity prohibiting any purchase or retention of securities involving a divided loyalty, the authority should have been stated. The discretionary powers granted were broad but still subject to the prohibitions laid upon all trustees."

However, it would seem from *Matter of Ridings*, 297 N. Y. 417, 418, that the court of appeals does not insist upon explicit verbiage by the testator excusing the trustee from the undivided loyalty rule, but such exemption must clearly appear from the will to relate to shares previously owned by the testator. There the language under review was "that said Trustee, in the investment of said trust funds, shall not be confined to investments legal for trust funds in the State of New York, but may continue any investment as left by me or may sell the same * * *."

In the case at bar, in view of the fact that the beneficiaries are not asserting that it was the duty of the trustees to sell the stock of the trust company and that they are not otherwise objecting to the prior conduct of the trustees in retaining the stocks which were held by the testator at his decease but join with them in seeking instructions as to their authority to hold the new stock obtained as a consequence of the affiliation, we are not called upon to decide what was the duty of the trustees concerning the stock in question before the affiliation. It will be time enough to decide that

question when and if a real controversy is presented to us wherein we may have the full benefit of adversary views.

Merely assuming then without deciding that prior to the affiliation of the trust company and the bank the trustees were authorized by the language of the testator to hold the shares of the Farmers' Loan and Trust Company and of the National City Bank which were held by the testator at his decease, did such testamentary language also authorize the acquisition of the new stock of the National City Bank in exchange for such stock, especially in view of the circumstances in which affiliation took place and the consequences resulting therefrom? Upon careful consideration of the matter in the light of the supreme importance in the law of trusts of the undivided loyalty rule, we are of the opinion, after weighing the comparative values of the cases presenting factual situations similar to the case at bar, that the trustees were not authorized by the testator to retain the new bank stock after the affiliation. We think this view is supported not only by the views expressed in *City Bank Farmers Trust Co.* v. *Cannon, supra,* and in the *Matter of Durston, supra,* but also by the cases of *In re Trusteeship of Stone,* 138 Ohio St. 293, and *Farr* v. *First Camden Nat. Bank & Trust Co.,* 4 N. J. Super. 89.

In the *Stone* case the testamentary provision was "all statutory limitations and restrictions as to the investment of trust funds now in force and that may hereafter be enacted by the state of Ohio being hereby expressly waived by me * * *." The will named as trustee a trust company in whose capital stock the testatrix held shares. After her decease this company merged with other similar trust companies to form the Union Trust Company which became successor trustee and continued to hold its shares in the trust. After observing that there was no "*specific* authority conferred to *retain* the bank stock" the court said: "Our studied conclusion, applicable to the instant case, is that a corporate trustee cannot acquire its own shares of stock as an investment, or retain its own shares in a trust, without

*express* authorization by the terms of the instrument bringing the trust into existence, or by provision of law." The court noted that the trustee did not keep the shares of bank stock owned by the testatrix but, by the merger, acquired its own shares which came into existence *subsequent* to her decease. It held that the trustee in the circumstances had no authority to hold those shares and that it should have sold them after the merger.

In the *Farr* case a somewhat similar situation was presented insofar as the effect of a merger of two corporations is concerned. Testator held stock in two banks, one a trust company, the other a national bank. In his will he appointed the trust company trustee and gave it broad powers over the stocks and bonds in the trust estate so that his executors and trustee "shall be under no responsibility by reason of their decision either to hold or to sell any of such stocks or bonds or interests therein." Under this provision the court implicitly held that the trustee could have properly retained the stocks of the two banks before the merger but the question was, could it hold the stock of the new trust company obtained in lieu thereof *after* the merger?

Under a statute in New Jersey this is expressly permitted if the new bank was substantially the equivalent of the merged banks. *In re Estate of Riker,* 125 N. J. Eq. 349. Following that case the New Jersey court found that the new trust company was substantially similar to the old trust company but not to the national bank and pointed out some of the differences. The court held that notwithstanding the testamentary provision the trustee had no authority to hold its own shares of stock obtained in exchange for the shares of the national bank stock, although it did not base its decision on a violation of the undivided loyalty rule. However, in our opinion the case stands for the proposition that testamentary authority to retain stocks does not include other stocks obtained in lieu thereof as a result of a merger of two corporations, unless the new corporation is virtually the same as the old corporation.

The right of a corporate trustee to retain its own shares under varying circumstances has been considered at some length in a comparatively recent law review article. 57 Harv. L. Rev. 601. Some of the cases herein referred to are discussed in that article as are a number of other cases but none of them except *City Bank Farmers Trust Co.* v. *Cannon, supra,* appear to have the same or similar features of affiliation as are present in the case at bar. We think that those features, the effect of which was so clearly described in that case, bring the case at bar within the requirement holding the corporate trustee to strict compliance with the undivided loyalty rule.

Here the corporate trustee, by negotiating with the National City Bank and finally agreeing to an affiliation with it by virtue of which the bank became to all intents and purposes the *alter ego* of the trust company, created a situation by virtue of which it acquired a huge additional block of its own stock that amounted in the aggregate to slightly more than 29 per cent of the testator's estate. In this connection it was said in *In re Trusteeship of Stone, supra,* at page 302: "Since a trustee is a fiduciary of the highest order and is charged with the utmost fidelity to his trust, he must refrain from creating situations where his own interests are brought into conflict with those of the trust, and from doing those things which would tend to interfere with the exercise of a wholly disinterested and independent judgment. In accepting a trust, the trustee is presumed to know the obligations and limitations connected with his high office and, if he transgresses, must abide the consequences."

The situation created by the trustee corporation in the case at bar was one which the testator did not contemplate when he authorized the trustees to retain stocks already in the trust estate, to invest in securities not of the character prescribed by law, and to participate in the reorganization of corporations in which the testator held stocks. As a result of the affiliation wrought by the corporate trustee's

own act the trustees no longer held the same stocks as the testator held at the time of his decease, and the control over such stocks was no longer in the independent trust company he knew and designated as one of his trustees.

The City Bank Farmers Trust Company is not the same institution as the Farmers' Loan and Trust Company. The former is the captive of the bank, has a mere nominal identity of its own, and is strictly limited in the scope of its operations to the narrow field of trust business. In this state its stock would not be considered bank stock within the meaning of testamentary language authorizing trustees to invest in bank stocks. *Bowen for an Opinion,* 68 R. I. 200. On the other hand the Farmers' Loan and Trust Company was an independent corporation which, ·before the affiliation, was authorized to conduct and actually did conduct a full banking business, including commercial banking and trust services. Hence in acquiring the City Bank Farmers Trust Company stock and the new National City Bank stock as a result of the affiliation made possible by the corporate trustee the trustees exceeded their authority and thereby violated the undivided loyalty rule.

Complainants have argued, however, that we should find the testator had a much broader intention which comprehended the possibility of the events taking place which later actually occurred as a result of the affiliation of the bank and the trust company. In urging this point they stress the facts in evidence disclosing that for over one hundred years the Taylor family fortunes have been closely and preeminently identified with both institutions, so much so as to resemble the aspects of a "dynasty" which would come to an end if the trustees are held to be without authority to retain the shares which they now hold in this trust. "The long continued interest and participation of the testator and his family in the affairs of the Bank and the Trust Company," complainants argue, "justify the inference that he considered it likely, or at least possible, at the time of the

execution of his will that the relationship of the Trust Company and the Bank might in the future become closer and that they might in some way become affiliated." They further argue that "If he thus foresaw the possibility of an even closer relationship between the Trust Company and the Bank than that which existed at the time of the execution of his will and during the remainder of his lifetime," it would compel the conclusion that the authorization in his will to retain investments also authorized retention of the stock of the bank *after* affiliation.

Our answer to that contention is that for us to find such an intention from those premises would be to rest our conclusion on pure conjecture and not on any inference that may reasonably be drawn from the will or the circumstances surrounding the testator at the time he executed it. We cannot thus speculate on what the testator would have intended by the language he used had he known that the stocks in question in his trust estate would be exchanged in such a manner that in effect they would all become shares of stock of the trust company that succeeded the company which he named as trustee. In our opinion the situation here is not like the one which was approved in *In re Ryan's Estate*, 186 Misc. 688. Nor do we think it similar to either *Boardman, Petitioner*, 16 R. I. 131, or *Doar* v. *Doar*, 63 R. I. 18.

The long historical connection of the testator and his ancestors with the trust company and the bank is not a sufficient basis on which to rest the extreme conclusion for which the complainants contend. Notwithstanding those circumstances the testator conceivably might not have desired that 29 per cent of the funds of his estate should continue to be invested in the stock of the corporate trustee thus depriving so substantial a portion of his trust estate of the full benefit of the undivided loyalty rule. Or, what is more likely, he never considered the implications of such a situation at all because it did not exist and was not even in

contemplation either at the time he made his testamentary dispositions or at the time of his decease.

Complainants cited several cases which they claim are close to the case at bar among which the most important, in our opinion, are *Greenawalt's Estate,* 343 Pa. 413; *Glauser Estate,* 350 Pa. 192; *Matter of Balfe,* 245 App. Div. 22; *In re Easton's Estate,* 178 Misc. 611; *Robison* v. *Elston Bank & Trust Co.,* 113 Ind. App. 633. We have examined those cases and are not certain that they adopt a different view from the one we follow here. Insofar, however, as they indicate a tendency to a more liberal construction of the will or trust instrument in favor of the trustee in order to avoid the consequences of a violation of the rule of undivided loyalty we must decline to follow them.

We adhere to the rule of strict construction in such a case in favor of the trust. The power of the trustee should be established with the utmost clearness and not rest upon conjecture. The presumption of the law is against such investments and, in the absence of clear provision to the contrary, all doubts regarding the scope of the language upon which the claim for such a power is made must be resolved against the party making the claim. See *Barker's Estate,* 159 Pa. 518. Following this rule it has been well said that the language under review should be limited to its narrowest compass and should not be so construed as to create a situation which is abhorrent to the law. *Wendt* v. *Fischer,* 243 N. Y. 439. And it is stated in 3 Bogert Trusts 377, §683, that "Clauses enlarging the trustee's investment powers are strictly construed. They must also be followed with close fidelity."

On the whole, therefore, we are of the opinion that the construction which we have given to the language of the testator in the case at bar is consonant with the rule of construction to be followed in such cases and is more consistent with the fundamental objectives sought to be obtained by the undivided loyalty rule of the law of trusts than would be a more liberal construction in favor of the trustee.

In our opinion the fidelity of trustees will be better assured and the integrity and security of trust estates better served by not countenancing any relaxation of the undivided loyalty rule unless it clearly appears that the testator or settlor intended to exempt the trustee from that rule. Because the complainants here have not met that test we have concluded that the trustees, after the affiliation of the trust company and the bank, were without authority to retain the shares of stock which they obtained as a result of such affiliation. They should have divested themselves of such stock within a reasonable time after the affiliation.

There are two other questions the answers to which are necessarily governed by the answer above. Were the trustees authorized to retain the shares of new bank stock which they indirectly obtained as a result of liquidating Annandale Farm, Inc.? Were the trustees authorized to retain the 5000 shares of new bank stock which they purchased in replacement of an equal number which they had previously sold after the affiliation? The answer to each question of course is in the negative. The exceedingly profitable results which flowed from the sale and later repurchase of 5000 shares of the new bank stock and which complainants have expressly called to our attention to show, we suppose, how well the beneficiaries of the trust have been rewarded by the financial acumen and astute management of the trust on the part of the trustees can in no wise weigh with us in our determination of the questions propounded.

In what we have said here and in what we have held as to the applicable law governing the trustees *after* the affiliation we have not passed and did not intend to pass any judgment on the prudence of the trustees in the course of the administration of the trust either before or after the affiliation of the trust company and the bank. We have been concerned only with the question of the power of the trustees, under the testamentary authority, to continue the investments in question.

On Ocober 3, 1949 the parties may present to this court a form of decree, in accordance with this opinion, to be entered in the superior court.

### ON MOTION FOR REARGUMENT.

NOVEMBER 16, 1949.

PER CURIAM. After our opinion in the above-entitled cause was filed certain of the respondents requested permission to file a motion for reargument, which request was granted. Such a motion was thereupon duly filed. Attached thereto were certain affidavits which, it was alleged in the motion, were in support thereof.

Sometime after such motion was filed respondents Francis Taylor and Edith Taylor Huntington retained additional counsel to represent their interests. Such counsel requested permission to argue the motion in open court or in chambers and to present additional evidence bearing on some of the points made in the motion. Their request was supported by other counsel in the cause including those who had already filed such motion on behalf of respondents Francis Taylor and Edith Taylor Huntington as well as certain other respondents. Later a second request for permission to present still further evidence was made on behalf of such respondents. After consideration, each of those requests is hereby refused. We shall consider the motion for reargument as originally filed.

The practice in this court in entertaining requests to file motions for reargument has always been, as far as we are aware, to receive a written motion containing a statement of the grounds on which the request rests and thereafter, without oral argument, to consider that motion *in camera* and grant or deny reargument. We have carefully considered the motion in accordance with such practice and we are of the opinion that no cause has been shown which would warrant further argument. We have reached that conclusion without reference to the affidavits attached to the motion or the proposed additional evidence.

Affidavits containing new evidence form no part of a motion to reargue, and on such a motion we do not reopen the case for the purpose of receiving additional evidence.

The other points which are outlined in the motion were, in our opinion, substanially briefed or orally argued at the hearing of the cause before us. There appears to us no valid reason why such points should again be argued. It is apparent from the tenor of the motion that counsel do not agree with the court that the undivided loyalty rule is applicable in the circumstances of this cause. We can only reiterate our firm opinion that it is.

Motion denied.