See also the preceding case.

---

## Barker's Estate.   Scott's Appeal.   Mellor's Appeal.

*Assignment for benefit of creditors—Vested and contingent interests—Will —Restraint on power of alienation.*

Every interest owned by a debtor in Pennsylvania, whether vested or contingent, may be the subject of assignment for the benefit of creditors, unless the instrument creating it contains a valid restraint upon his power of alienation.

Where a will provides that during a trust for the maintenance and support of the husband and family of the testatrix, the estate shall " be enjoyed by him and them without being in any way subject to or liable for the debts or engagements of my said husband or any of our children," and the trust estate still remains in the possession of the trustee, a general assignment by a son of testatrix for the benefit of his creditors does not pass the son's interest in the estate.

*Spendthrift trust—Discretionary power in trustee to pay over.*

Where in such a case testatrix gave the executor or trustee absolute power in his discretion to pay to such son his share of the estate, the executor may pay the son's share directly to him after he has made an assignment for the benefit of creditors.

*Will—Vested and contingent interest—Advancement by executor.*

A will gave the executor power to make advances to testatrix's son on account of an interest which was vested, subject to be divested upon a contingency which never happened. The executor made advances to the son, and took his notes therefor. The son subsequently died leaving a will by which he gave his property to his mother's executor. *Held,* that the said executor was entitled to credit in his account for the advancement to the son.

*Trusts and trustees—Will—Investments.*

Testatrix appointed her husband as executor, " with full power to take

charge of my estate, and dispose of the same both real and personal at his discretion." In another portion of the will, in referring to the authority given to the executor to allot the various shares, testatrix expressed " the utmost confidence that he will endeavor to do equal justice to all concerned." Throughout the entire will the executor was given extensive discretionary powers as to the distribution of the estate. The executor made investments not authorized by statute. *Held*, that he was not liable for losses incurred by the failure of the investment.

Argued Jan. 16, 1894.    Appeals, Nos. 172 and 173, by Anna B. Scott and Deborah W. Mellor, from decree of O. C. Phila. Co., Oct. T., 1892, No. 393, dismissing exceptions to adjudication in estate of Sarah W. Barker, deceased.    Before STERRETT, C. J., GREEN, MCCOLLUM, MITCHELL and FELL, JJ.

Exceptions to adjudication of executor's account.

Material portions of decedent's will were as follows:

" I, Sarah W. Barker, wife of Abraham Barker of Philadelphia, do make this my last will and testament hereby appointing my husband Abraham Barker my executor, with full power to take charge of my estate and dispose of the same both real and personal in his discretion, subject to the restrictions and conditions hereinafter set forth, applying so much of the proceeds as may be necessary to the payment of the incumbrances thereon, dividing the balance which may remain equally among my children, and if any or either of them die before such division, such portion as would have appertained to the deceased, to be divided among his, her or their children—share and share alike. Such distribution not to take place until the death of my said husband, until that time, the whole income or so much thereof as he may desire, to be devoted to the support of the said Abraham Barker and such members of our family as may in his discretion require it. If however, at any time during the life of my said husband, after the coming to the age of twenty-one years of any of our children the said Abraham Barker should think it expedient to bestow on such child or children of age, such portion of my estate as such child or children would inherit at the death of my husband Abraham Barker, he is hereby fully empowered to do so in his discretion, without being held liable to account therefor.

" This will to appertain to all the property both real and personal which I now possess derived from my father William Wharton or that which I shall inherit by my father's will, after

the death of my mother Deborah F. Wharton—and also to all other property of which I may be possessed.

In case of the death of her husband during the minority of any of her children, she named trustees " to act for such minors—possessing them of their property when they became of age."

" In giving to my husband and executor the power to sell and dispose of my real and personal estate it is my will that such sale and disposition be made so that the purchaser shall . be freed and discharged from all liability to see to the application of the purchase money.

" It is my will in creating the foregoing trust for the maintenance and support of my husband and family that the same shall be enjoyed by him and them without being in any way subject to or liable for the debts or engagements of my said husband or any of our children.

" In giving my executor authority to bestow upon any of our children after they shall arrive at the age of twenty-one years, his or her portion of my estate, my will is that should he in such bestowal exceed the share or proportion which would have otherwise fallen to the share of such child or children he shall not be held liable to account to the other children for such excess having the most entire confidence that he will endeavor to do equal justice to all concerned—And it is my will that should my said husband think proper to advance to any of our children after they shall arrive at the age of twenty-one years, any portion of my estate less than the whole of his, her or their share, he shall be at liberty to do so in such amounts as he shall deem expedient."

The adjudication was as follows, by ASHMAN, J. :

" Several questions were raised at the audit, the first of which was involved in an exception to investments made by the executor and trustee.   In 1886 and 1889 the accountant bought for the estate six per cent bonds of the Oregon Pacific Railroad Company, at par value of $40,000, for $37,440. .The investments were not within the terms of the statutes which designate as legal certain securities in which trust funds, where the creator of the trust has not prescribed otherwise, shall be placed; and, unless the accountant can find his vindication in the will for stepping outside of the statute, the objection must be sustained.   Whether the purpose of the legislature was to

ease the liabilities of trustees or to lessen the risks of trust
estates is uncertain; but there is little doubt that it has made
trustees insurers of all investments effected on their own re-
sponsibility; and Worrell's Appeal, 23 Pa. 44, is an authority
for this position. [The will, however, the auditing judge
thinks, gives to the husband an absolute choice of invest-
ments.] [3]  It is the will of a wife, and it begins by naming
her husband as executor.  From the start to the finish it shows
an intent to put the conduct of the estate in his hands and to
make it subject to his judgment.  The first paragraph gives
him 'full power to take charge of my estate and dispose of the
same, both real and personal, at his discretion,' and the last
paragraph relieves him from accounting to other children where
he has advanced to one child in excess of its share.  [It per-
mits him, moreover, at his own volition, to give to a child less
than its share.  The will closes with an emphatic declaration
of the entire confidence which the testatrix reposed in her hus-
band.] [4]  Expressions like these have made the statutes
regulating investments a dead letter to this accountant.  It is
doubtful whether in face of them he can be held amenable
even to the rules of diligence which were applied to trustees
before the acts were passed.  But accepting those rules in their
severity, was there anything in the character of the disputed
securities which was notice to the trustee of unusual hazard?
[The road, upon the faith of which the bonds were issued, was
then still in process of construction, but the contemporary be-
lief in its ultimate success was shown by the very large pur-
chase of its bonds by men of acknowledged shrewdness and
foresight in the financial world.  Tested by business standards
of prudence, an investment in these loans by the accountant
as an individual and at his own risk would certainly not be
open to criticism.] [5]  He was walking in the same path
with other and confessedly cautious men of affairs.  As trustee,
was he bound to a higher display of efficiency and to a degree
of responsibility which might be termed extraordinary?  On
this point the legal rule has been laid down so uniformly and
often that it has become an axiom; in the language of the de-
cisions 'the diligence required of a trustee in the management
of the trust estate is precisely that which a man of ordinary
prudence would practice in the case of his own property:'
Jones's Appeal, 8 W. & S. 143.  It is true that the power to

take charge of the estate was made subject to certain restrictions and conditions, as they were called.  But those restrictions were really for the benefit of the husband and were simply intended to preserve the use of the entire estate to him for life.  The exceptions to the credits, and to those for purchases of Baltimore and Ohio car trust, and Lehigh Valley mortgages, and to the mortgage on certain real estate are dismissed.  As to the three last mentioned, no evidence was submitted by the contestants.

" Objection was also made to an advance of money to Wharton Barker, credit for which was taken under date of January 28, 1891, in the sum of $7,400.   The payee was a son of the testatrix, respecting whom the husband was authorized by the will to advance him after reaching his majority ' such portion of my (her) estate as (he) would inherit at the death of my husband,' and for doing which the husband was not to be held liable to account.   The son was of full age, but on November 20, 1890, and before the advance, had made an assignment for the benefit of creditors.   The objections to this credit were somewhat conflicting.  · It was claimed (1) that the interest of the son was contingent, and that the advance was therefore premature and unauthorized; (2) that the interest was vested, and that the advance was valid, but should have been made to the assignee, and not to the son; and (3) that whether the interest was vested or contingent, the trust was for a spendthrift, and the payment to the cestui que trust was improvident.   The case does not call for an elaborate consideration of these questions.   The will was written or dictated by a woman who knew very little about spendthrift trusts and still less about contingent interests.   Her chief concern was to secure the enjoyment of her property by her husband and children, and to that end she declared her intent to be that the property should not be liable for the debts either of her husband or her children.   She did not say how this was to be effected; and notwithstanding the trust, if there was one, she authorized her husband to give to a child a sum which might be greater or less than its share, and the only restraint which she placed upon his discretion in the matter was that it should be exercised after the child was twenty-one.  Her words were: 'In giving my executor authority to bestow upon any of our children, after they shall arrive at the

age of twenty-one years, his or her portion of my estate, my will is,' etc.  If this does not imply that, to her mind at least, her children took vested interests when they reached that age, language is powerless to express thought.  The power which she thus gave to the trustee was wholly outside of the question whether the shares were vested or uncertain; it was a power to 'bestow,' as the testatrix said, 'upon any of our children' what the husband should see fit to bestow, and for exercising which he was absolved from accounting.  If the power violated the theory of a spendthrift trust, it was nevertheless conferred by the testatrix who created the trust, assuming it to have existed; and the best proof that the trustee did not subject the advancement to the risk of attachment by creditors is found in the claim now made by the assignee, to surcharge the accountant because the creditors were unable to seize it.  The power was equally independent of the rights of creditors, for the reason that it vested in the volition of the trustee, and could not be enforced by creditors.  To deny the validity of its exercise in this instance is to forbid any act of charity to a bankrupt, and to visit poverty with worse penalties than crime.  To put the case in the strongest aspect for the assignee, we will admit that the insolvent son took a vested interest, the possession of which only was deferred until the death of the father.  When the son assigned his estate for the benefit of creditors he parted with that interest to his creditors.  [But the trustee who held the legal title had the right to bestow upon any of the children a sum greater or less than their respective shares.  If he chose to exercise that option by giving to the children other than the bankrupt a sum so far in excess of their portions as should leave nothing to the debtor, the creditors would be powerless.]  [6, 7]  They would be equally powerless to coerce him into using the power on behalf of their debtor.  The creditors, like the son, must look to the will for the title to the son's property, and looking to that instrument the testatrix is seen to have given what neither the creditors nor the son could escape from or could enforce, a discretion to the trustee to bestow a gift, irrespective of the demand of any party or parties whatever.

" The son took a vested interest.  The gift was: (1) Of the balance of the estate, after the husband's death, to the children

equally.   (2) The income was to be applied for the support of the children during minority.   (3) The husband was permitted to pay to a child after reaching full age his share of the estate. (4) The substituted trustees were to act for the children during minority, and were required to put the children in possession of their shares when they should become of age.   The contingency of a dying before the division of the estate was therefore a death *during minority* before such division, and the children took vested interests, which were subject to be divested by their death under twenty-one, an event which did not occur.

" The objection which was urged against the credit of January 1, 1879, for $4,000 advanced to Sigourney Barker, a son, is disposed of, the auditing judge thinks, by what has been already said.   That son died in May, 1882, testate, without children.   It was stated and not denied that the accountant had accepted from him promissory notes for the amount of the advancement.   The payment, however, like that to Wharton Barker, is described in the account as an advance, and [there is every reason to infer that the notes were taken as a mere receipt for the money,] [8] [inasmuch as no attempt was made to collect them in the long interval (about three years and four months) between their date and that of the son's death.] [9] Both sons were of full age when the payments were made to them.   [The only possible obstacle to the payment to Sigourney was the clause in the will against liability for debts,] [10] and that point has been discussed.   It is exceedingly doubtful, it may be added, whether the provisions constituted a spendthrift trust at all.   It could operate at longest only during the father's lifetime.   It was not attached to any advance which the trustee might make, and it was certainly not impressed upon the direction to the substituted trustees to ' possess ' the children of their shares on coming to full age.   The credits are allowed to stand.

The balance of principal in cash and securities
was shown to be     .     .     .     .     . $58,587 88
Add surcharge which was agreed to     .     1,851 73
                                          ——————
                                          $60,439 61

" Which is awarded to the accountant as trustee upon the trusts declared by the will."

Appellants, Mrs. Scott and Mrs. Mellor, filed exceptions among others as follows:

" (1) Because the learned auditing judge refused to allow an objection made to two investments made by the accountant in six per cent bonds of the Oregon Pacific Railroad Company, or to either of said two investments; the said bonds being those of a corporation of a distant state, the railroad being unfinished; the bonds purchased on an average of about nine per cent below par; part thereof being purchased at a discount of seventeen and one half per cent or $2,625; and the accountant's firm being the agent in Philadelphia for the sale of said issue of bonds, and one of said purchases having been made from his said firm." (2) Refusal to find the facts as in exception 1. (3–10) The findings as in brackets. (11) Failure to report that Sigourney Barker bequeathed his estate to the accountant, who was appointed his executor.

The exceptions were dismissed by the court in the following opinion, by PENROSE, J.:

" Every interest owned by a debtor in Pennsylvania, whether vested or contingent, may be the subject of assignment for the benefit of his creditors, unless the instrument creating it contains a valid restraint upon his power of alienation: Wickersham's Ap., 18 W. N. 36; Churchman's Est., 18 Phila. 228; (on appeal), 22 W. N. 131. Two questions, therefore, arise as to the assignment in the present case: Did it, or was it intended to, embrace the interest of the assignor in the estate of his mother, the testatrix; was it assignable under the terms of her will. We have not been furnished with a copy of the assignment and cannot therefore determine the first question; but, assuming its affirmative answer, the second point remains to be considered. The will expressly provides that, during the trust for the maintenance and support of the husband and family of the testatrix, the estate shall ' be enjoyed by him and them without being in any way subject to or liable for the debts or engagements of my said husband or any of our children.' So far as relates to income, the provision is unnecessary in case of the children—their right to any part of it being wholly dependent upon the discretion of the trustee: Keyser v. Mitchell, 67 Pa. 473. With regard to principal, where there is a present gift, in possession, of the entire beneficial ownership, a trust to pro-

tect against creditors is invalid: Keyser's Ap., 57 Pa. 236; but the power of alienation may, unquestionably, be withheld in the case of a contingent interest before it vests, even in England: Large's Case, 2 Leonard, 82; 3 Leonard, 182; Barnett v. Blake, 2 Dr. & Sm. 177; and so it would seem in Pennsylvania, in case of a vested interest, prior to its coming into possession, or where the restraint is confined to a limited period not transgressing the rule against perpetuities: McWilliams v. Nisly, 2 S. & R. 507, 513. See also Jauretche v. Proctor, 48 Pa. 472. In the recent case of Beck's Ap., 133 Pa. 51, it was held that a provision that an absolute legacy should not be liable to attachment is good so long as the legacy remains in the hands of the executor; and this was followed in Goe's Est., 146 Pa. 431. If in the present case it be held that an assignment by one of the children for benefit of creditors passed the share which he would take at the death of the father, it would thus be made subject to both his debts and engagements, in spite of the positive direction that it should not, 'in any way,' be subject to either. The legality of the restriction being established by the authorities referred to, it follows that, during the continuance of the trust, the right of alienation for payment of debts is withheld from the children as to the shares coming to them at the death of the husband, and that consequently the assignee has acquired no interest such as to entitle him to interfere in the settlement of the account of the executor.

" The questions with regard to the share of the son who has died depend upon the character of the interests taking effect at the death of the husband; and without overruling Manderson v. Lukens, 23 Pa. 31; Crawford v. Ford, 7 W. N. 532; Reed's Ap., 118 Pa. 215, and very many other cases, we cannot sustain the exceptions. These interests are clearly vested, subject to being divested by death before the period of distribution, leaving children. The rules upon this subject are not peculiar to Pennsylvania: Harrison v. Foreman, 5 Vesey, 207; Smither v. Willock, 9 Ib. 233; Hodgson v. Smithson, 21 Beav. 356. The authorities, English and American, will be found in the textbooks (see Williams on Executors, Perkins' edition, 1877, 1383; Hawkins on Wills, 267–8). Cascaden's Est., 153 Pa. 170, cited by the exceptants, was decided under its own peculiar circumstances. It differs from the present case in many

particulars, one of which is the absence of the provision permitting distribution, at the discretion of the trustee, during the continuance of the prior estate. Here the son having died without children, his interest, which was not divested, passed under his will to his father, who took it with the right of receiving distribution in advance. It is immaterial, therefore, whether the notes referred to in the exceptions were intended as advances or not. If they were not, they remained part of the original estate until transferred, by way of anticipation, to the father as legatee of the son.

"It is immaterial that the income was at one time brought into the account. It was improperly there, and it was proper to withdraw it. The whole income is given by the will to the husband, whose rights are not reduced by the discretionary power to apply it for the support of such members of the family as, in his judgment, may require it. There is no direction that the income shall be consumed as it accrues. It does not accumulate for the benefit of the estate, but remains during the husband's lifetime subject to his right to devote 'the whole' to his support, etc.

"It does not appear that the auditing judge was asked to strike items of distribution and of investment from the administration account, for otherwise he certainly would have done so. Nothing can be said in commendation of an account which blends distribution with administration. The Supreme Court, in very many cases, has spoken of the mischief and confusion thus occasioned (Yundt's Ap., 6 Pa. 35; Com. v. Snyder, 62 Pa. 153; Jones's Ap., 99 Pa. 124), and the rule of court forbids it in express terms. Equally objectionable is the practice of including investments in the administration account—the obvious effect being to show a balance for distribution less than what is actually held. The amounts credited for payments in distribution and for investments will be added to the balance shown by the adjudication, as will also the portions of the estate taken in distribution and not debited at all; and the whole will be awarded to the accountant, subject to payments so made in distribution, to be held for the purposes of the trust. In this way the shares of the distributees will be made apparent.

" With regard to the investments in the bonds of the Oregon Pacific Railroad Company, the majority of the court concur

with the auditing judge in the opinion that upon the whole will the intention of the testatrix as to the discretionary powers of the accountant is apparent. Speaking for myself, I do not concur in this view. It is conceded, as it must be, that the investment was not one which an executor or trustee, in the absence of authority conferred by the instrument creating the trust, is permitted to make; for while the measure of care required of a fiduciary is in general that which a man of ordinary prudence exercises in the management of his own affairs, a much more restricted rule governs in the case of his investments—especially, it would seem, in Pennsylvania, where even an act of the legislature is not permitted to authorize the investment of trust funds in the bonds or stock of any private corporation: Constitution, article 3, section 22. It is true, this may be authorized by the creator of the trust, but where such a provision is relied on, it is for the trustee to establish it with the utmost clearness, and when shown it will be strictly construed. That he has acted with perfect good faith, and that sagacious capitalists, dealing with their own moneys, have bought the same securities, is immaterial (Ihmsen's Ap., 43 Pa. 431) ; and though we may sympathize with an honest trustee, whose investment outside of those permitted by law has been made with a sincere desire to promote the interests of his beneficiaries, we are powerless to relieve him. The rule has been established for the protection of trust estates, and the hardship of any individual case is as nothing compared with the disastrous results that would flow from its relaxation. The rule is founded upon the highest considerations of public policy. See Perry on Trusts, sections 452, 460; Mant v. Leith, 15 Beav. 524 ; Worrell's Ap., 9 Pa. 508; Ihmsen's Ap., supra. Unless, therefore, there is that in the present case which enables us to say with certainty that the testatrix intended her executor not to be restrained in this respect, the consequences of his deviation from the plainly marked path ought to be borne by him alone. The necessary authority, it is said, is found in the provision appointing the executor 'with full power to take charge of my estate and dispose of the same, both real and personal, at his discretion,' and in the emphatic declaration of the testatrix, when speaking of his powers with reference to allotment of shares to her children, that she 'has the most entire confi-

dence that he will endeavor to do equal justice to all concerned;'
coupled with the very extensive discretionary power throughout
the will with regard to distribution of principal and income, and
the fact that the will is that of a wife appointing her husband,
in whom she has implicit confidence, executor. Is this suffi-
cient? The discretion given in express terms relates, in the
one case, to the power to 'dispose of' the estate, real and
personal, by way of conversion, and, in the other, to his power
to make distribution among his children. There is no grant
of discretion with regard to investment, unless it is to be found
in the direction that he is to 'have full power to take charge
of' the estate. But taking charge of the estate confided to his
care is simply what every trustee must do, and in the absence
of a provision that his discretion shall extend to its 'manage-
ment,' or to the management of the funds produced by the
'disposal' of it, can it be said that it appears beyond all ques-
tion that enlarged powers of investment were intended? The
power ought not to be sustained upon conjecture, nor inferred
from general expressions of confidence, nor express grant of
discretion as to matters not relating to the management of the
fund. The presumption is against the existence of such a
power, and all doubts should be resolved against the party as-
serting it. As, however, the opinion of the majority of the
court is not in accordance with these views, the exceptions
must be dismissed.

"The exceptions are dismissed, and the adjudication, with
the modification as to credits for distribution and investment,
confirmed absolutely."

*Errors assigned* were, among others, (1–11) dismissal of above
exceptions, quoting them.

*J. Howard Gendell,* for Mrs. Scott, and *John G. Johnson,* for
Mrs. Mellor, cited : Worrell's Ap., 9 Pa. 508 ; Ihmsen's Ap., 43
Pa. 431; Baer's Ap., 127 Pa. 360; Hill on Trustees, 369, § 460 ;
Lewin on Trusts, 338; Mortimore v. Mortimore, 4 DeG. & J.
472 ; Mant v. Leith, 15 Beav. 525 ; Harris v. Harris, 29 Beav.
107 ; Rush's Est., 12 Pa. 375; Cascaden's Est., 153 Pa. 170 ;
Coggin's Ap., 124 Pa. 10; High's Est., 21 Pa. 283 ; Levy's Est.,
153 Pa. 174; Hanson v. Graham, 6 Vesey, 249 ; Sanderson's

Trusts, 3 Kay & John. 497 ; Thorp v. Owen, 2 Hare, 610 ; Limbrey v. Gurr, 6 Mad. 151 ; Scott v. Josselyn, 26 Beav. 174 ; Crawford's Ap., 61 Pa. 52, Act of April 18, 1853, § 9, P. L. 503.

*S. S. Hollingsworth* and *Richard C. McMurtrie*, for appellee, cited : Manderson v. Lukens, 23 Pa. 31 ; Crawford v. Ford, 7 W. N. C. 532; Reed's Ap., 118 Pa. 215 ; 1 Jarman on Wills, 778, 779, 814, 820 ; Frame v. Stewart, 5 Watts, 435 ; Hanson v. Graham, 6 Ves. 246 ; Patterson v. Hawthorn, 12 S. &. R. 113 ; Kinsey v. Lardner, 15 S. & R. 196 ; Theobald, Const. of Wills, 254; Sanderson's Trusts, 3 Kay & John. 497.

### SCOTT'S APPEAL.

PER CURIAM, January 29, 1894 :

All the facts necessary to a proper understanding of the questions involved in this case are clearly and concisely stated in the opinion of the learned auditing judge, and need not be repeated. A consideration of the questions arising upon said facts has led us to the conclusion that they were rightly decided, and for reasons given in said opinion we think the decree of the court below should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by appellant.

### MELLOR'S APPEAL.

PER CURIAM, January 29, 1894 :

This case was argued with Anna B. Scott's Appeal from same decree and involves precisely the same questions. For reasons briefly stated in the per curiam opinion just filed in that case, No. 172 of this term, the decree should be affirmed.

Decree affirmed and appeal dismissed with costs to be paid by appellant.