## Wright's Trust

*Ernest Scott*, for accountant.
*Edward B. Hodge, Jr.*, for beneficiary.

BROWN, JR., J., May 11, 1945.—The first account, and supplement thereto, of Fidelity-Philadelphia Trust Company, trustee for the Annie Wright Seminary, under deed of trust of Charles B. Wright, dated November 15, 1884, which was filed on November 14, 1944, was presented to the court for audit on January 23, 1945.

Proof of notice of the filing of the account, and of the time and place for audit, was duly made and filed of record.

Exceptions were filed by Annie Wright Seminary, the beneficiary under the deed, to the following items in the supplement to the account: (1) Credit claimed in the amount of $1,035. for the purchase on November 1, 1944, of $1,000. Armour & Company of Delaware, First Mortgage 20 year S. F. Series E 3¼s due 9/1/64 @$103.50 (page 2) ; and (2) retention thereof in the balance of principal (page 3).

The reasons assigned in support of the exceptions are, respectively, (1) that the security purchased is not a legal investment for trust funds and the deed of trust does not authorize investment in so-called "non-legals", and (2) that the retention of non-legal investments is at the peril of the trustee.

The pertinent part of the deed of trust is as follows: "To have, hold and keep the same [$50,000. of the bonds of the Northern Pacific Railroad Company] to the said Company, and its successors in Trust, as an 'Endowment Fund' forever, with power and authority under and with the assent and approval of the Bishop for the time being, of the Protestant Episcopal Church, of Washington Territory, having jurisdiction over Tacoma, or of a majority of the Trustees of 'The Annie Wright Seminary' aforesaid, to change and from time to time change the investment of the said Fifty Thousand Dollars, and for that end to sell the aforesaid Bonds, and realize from the same, and in like manner to sell and resell, and realize from the Securities that subsequently take their place, and after, at and upon the sole discretion and judgment of said Company, to successively reinvest the proceeds anew, or in other Securities, when and as often as the said Company Trustee may deem it expedient to do so, in order to keep the said 'Endowment Fund' always invested ju-

diciously, and so as to yield interest and income, for the following uses and purposes:"

At the time of the execution of the deed, the settlor transferred and delivered to the trustee $50,000. of the bonds of the Northern Pacific Railroad Company, which constituted the entire trust estate. As the result of the failure of the purpose of another trust established by the settlor, the trustee was directed by decree of this court entered June 4, 1896, to apply the fund held for such purpose to the uses and purposes of the deed now under consideration, "subject to all the terms and conditions" thereof, and the trust estate, as thus supplemented has been administered accordingly.

The bonds of the Northern Pacific Railroad Company originally constituting the trust estate were surrendered and in lieu thereof other bonds of a later issue and stock of the company were received by the trustee. The stock was sold, as well as bonds of another company which had subsequently become part of the trust estate by the decree above-mentioned, and the proceeds were invested in bonds secured by mortgages on properties in Philadelphia and additional bonds of the Northern Pacific Railroad Company. While the bonds of that company obtained in exchange for the bonds originally in the trust estate and also by purchase, all of which are still retained by the trustee, may not have been legal investments for trust funds when acquired by the trustee, they are such at the present time by virtue of changes in the law. The beneficiary has not objected to their acquisition and retention by the trustee.

The bond of Armour & Company of Delaware, which is the subject of the beneficiary's exceptions, was purchased by the trustee apparently with moneys realized originally from the sale of the stock of the Northern Pacific Railroad Company, which was with the consent of the beneficiary, or the bonds which became part of the trust estate by the decree referred to above, and

subsequently invested in mortgages. This bond, which is still retained by the trustee, is concededly not a legal investment for trust purposes, and so the question presented for determination is whether nonlegal investments are permitted by the deed of trust.

The language of the deed is not free of ambiguity. By the provision, which is quoted in full above, the trustee was authorized, "under and with the assent and approval" of the beneficiary, "from time to time to change the investment" of the $50,000., and "for that end to sell" and "realize from" the bonds originally delivered to it by the settlor, "and in like manner to sell and resell, and realize from the Securities that subsequently take their place." It is clear from that phraseology that the consent of the beneficiary was required not only to the sale of the bonds originally in the trust estate but also to subsequent purchases and sales, the words "from time to time to change the investment" and "in like manner to sell and resell" permitting no other conclusion. But the trustee was also authorized, by the words which follow in the provision, "and after, at and upon the sole discretion and judgment" of the trustee, "to successively reinvest the proceeds anew, or in other Securities, when and as often as the said Company Trustee may deem it expedient to do so, in order to keep the said 'Endowment Fund' always invested judiciously, and so as to yield interest and income." The words "at and upon the sole discretion and judgment" of the Trustee were apparently used for the purpose of removing the restriction previously imposed on the trustee by the words "under and with the assent and approval" of the beneficiary, and not for the purpose of removing the limitation on the kind of investments to be made by the trustee imposed by law. This construction is supported by the word "sole", which denotes acting without another or individually, and also by the words "when and as often as the said Company Trustee may deem it expedient to do so", for they ex-

clude the exercise of "discretion and judgment" by the beneficiary, and place such responsibility on the trustee. alone. It is to be noted, however, that had the settlor intended to remove the limitation as to the kind of investments to be made by the trustee imposed by law, the restriction imposed by the deed would remain, and the consent of the beneficiary to all investments, whether legal or nonlegal, would be necessary. The settlor might have meant to give the trustee complete power to make investments and reinvestments without any restriction or limitation of any nature whatsoever, but this is not sustained by the wording of the provision.

Although the trustee was empowered to "reinvest * * * in other Securities" at its "sole discretion and judgment" and "when and as often as" it "may deem it expedient to do so", it was required by the deed "to keep the said 'Endowment Fund' always invested judiciously, and so as to yield interest and income." No case has been cited, and research has revealed none, in which the words "invested judiciously" have been defined, but their meaning and effect upon the trustee's power are readily ascertainable. While "judiciously" might be construed as requiring judicial authority, i. e. the approval of the court, it is sufficient to consider and treat it as meaning "directed or governed by sound judgment", or "wisely", "prudently", "sagaciously", "discreetly". See Webster's New International Dictionary. The significance of such words is obvious— that the trustee was confined to the types of securities which are considered and specified by law as proper and safe for trust funds. Thus, in Hale Estate, 347 Pa. 177, where the trust fund was directed to "be invested in good sound securities", the court, in refusing to hold that the creator of the trust "meant something *less* sound than what the law regards as sound" stated (p. 179) :

"Although there are many non-legal stocks and bonds which in common parlance are termed sound, in

view of the legislative declaration of what shall be regarded as sound we would resolve any ambiguity which might be thought to exist in his expression by holding that legal securities were intended . . . "

It is also pointed out in Hale Estate, supra, 179, that the word "securities" is not always to be interpreted as including common stocks, and that in McGraw's Estate, 337 Pa. 93, and Wood's Estate, 130 Pa. Superior Ct. 397, which held that it did, it was "used with reference to non-legals". In the former case the trustee was authorized by the will to make investments "without restrictions to those designated as 'legal investments' ", and in the latter case the will stated that the trustees "shall not be confined to such securities or investments as are known or considered lawful and valid securities or investments for trustees". There was no such provision in the will in Hale Estate, supra, and there is none in the deed in the instant case. Likewise, in Greenawalt's Estate, 343 Pa. 413, similar phraseology was not used, but "the extensive discretionary power given to the trustees was interpreted to permit investments in non-legals" (Hale Estate, supra, p. 180), the court stating that (p. 417) "if there could have been any doubt concerning his [the testator's] intention to authorize investment in nonlegals, the doubt is removed by the terms of the authority to invest in real estate". The deed in the present case does not authorize the trustee to invest in real estate, but requires it to invest in "Securities". The words "interest and income" are also used, but not the word "dividends", as in Jones' Estate, 344 Pa. 100, where it, in connection with the other words in the will, was construed to confer authority on the trustee to retain testator's investments in common stocks. While "income" generally refers to receipts of any kind, one of its synonyms is "interest" but not "dividends". Webster's New International Dictionary. "Interest" means the rate per cent of money paid for the use of money bor-

rowed, the principal of which may be evidenced by bonds, mortgages or notes, whereas "dividends" means the shares of the profits to be divided and distributed among the shareholders, who are the owners of the fund or property. Accordingly, the absence of the word "dividends" from the deed in the present case shows that the settlor did not intend reinvestments to be made in common stocks. In fact, this was acknowledged by the trustee when it sold, with the beneficiary's consent, the stock of the Northern Pacific Railroad Company received upon the surrender of the bonds of that company.

The bonds of the Northern Pacific Railroad Company are now legal investments for trust funds, but even if they were not at the time of the execution of the deed when the settlor transferred $50,000. of them to the trustee to constitute the trust estate, and later when those were surrendered for a later issue, and also when more of the latter were acquired with the proceeds of other bonds added to the trust estate by the decree above mentioned, that does not indicate that the settlor intended to authorize the trustee to make investments in other non-legals. There is no doubt that the trustee was empowered to retain the bonds of the Northern Pacific Railroad Company. Not only did the settlor transfer them to the trustee, which act must be viewed as showing his intention that they be retained, but he empowered the trustee "to sell the aforesaid Bonds" only "under and with the assent and approval" of the beneficiary. That additional bonds of that company were subsequently purchased with the proceeds of the bonds added to the trust estate at a time when they were not legal investments does not, of course, alter or extend the trustee's powers as set forth in the deed. Indeed, authority to do so, is implied from the direction in the decree, applying the trust fund, which such other bonds constituted, to this trust estate "subject to all the terms and conditions of" the deed

now under consideration. But the power to retain the bonds which the settlor specified did not, however, give the trustee authority to invest in other nonlegal bonds unless the deed so provided, and, as pointed out above, the trustee is confined by its terms "to reinvest" in legal securities.

Furthermore, the deed is not clear as to when the trustee was authorized to commence acting without the "assent and approval" of the beneficiary in making reinvestments, for, as pointed out above, the first part of the provision required such consent to purchases and sales subsequent to the sale of the $50,000. of the bonds of the Northern Pacific Railroad Company which constituted the entire trust estate at its inception, and the latter part, wherein the trustee was authorized to act alone, starts with the words "and after" without clearly specifying the time or the event. Hence, resort must be made to other words in the provision. The words "Securities that subsequently take their place", that is, the place of such bonds, might mean any other securities, but when considered with the words "other Securities", it appears that they were used to refer to securities of the Northern Pacific Railroad Company, and that "other Securities" were intended to refer to securities not of that company but to other or different securities. This being so, the time when the trustee is authorized to make reinvestments without obtaining the consent of the beneficiary, may be determined, though it may be not one date but a series of dates depending upon whether the bonds are sold at one time or from time to time. The problem is further complicated by the fund which was added to the trust estate by the decree above-mentioned for it was "subject to all the terms and conditions of" the deed now under consideration. Such matters, however, are not involved in the present issue, except as they illustrate the ambiguousness of the language of the deed, and the necessity of

the trustee's making reinvestments in the types of securities specified by law.

The investments in nonlegal securities "may be authorized by the creator of the trust, but where such provision is relied on, it is for the trustee to establish it with the utmost clearness": Barker's Estate, 159 Pa. 518, 528; Taylor's Estate, 277 Pa. 518, 523-524. "It is well settled that the power to invest in non-legals must not rest upon equivocal words or upon conjecture, but must clearly appear. The presumption is against the existence of such power, and all doubts are resolved against the party asserting it": Hale Estate, supra, 178. There is no express provision in the deed of trust in the present case authorizing the trustee to reinvest in nonlegal securities, nor does an analysis of its phraseology show any grant of such authority made with the *utmost clearness* as required by the decisions.

The exceptions are sustained, and the trustee is directed to restore in cash the amount improperly used in the purchase of the bond of Armour & Company of Delaware.

The account and the supplement to the account are confirmed in other respects, and the additional credits claimed in the petition for distribution and at bar, to which no objection has been made, are approved and allowed.

Counsel will prepare a schedule of distribution in accordance with the foregoing, which, when approved, will form part of this adjudication.

The prothonotary will forthwith notify counsel of the filing of this adjudication; and further, that if exceptions are not filed thereto within ten days after receipt of said notice, the adjudication will become absolute.