## Child Estate

258

*Montgomery, McCracken, Walker & Rhoads,* for accountant.

*Ernest Scott* and *William Carson Bodine,* for corporate trustee.

*David B. James, Jr.,* for guardian and trustee ad litem.

LEFEVER, J., November 4, 1957.—Testator died February 15, 1929, leaving a will, dated April 28, 1925, and two codicils thereto, dated April 24, 1928, all of which were duly probated. Letters testamentary were granted to Fidelity-Philadelphia Trust Company, the executor and trustee named in the will.

Testator, after disposing of his tangible personal property, gave his residuary estate in trust for the benefit of his two sisters, Mary B. Child, who predeceased testator, and Caroline T. Howland, his two nephews, Llewellyn Howland and Edward Morris Howland, and the issue of the nephews, as more specifically provided in the will and detailed in the proposed statement of distribution. By codicil, inter alia, he provided for certain annuities. One of said annuitants, Mary E. Vogt, still survives.

By decree of this court, dated May 6, 1957, William E. Chambers, Esq., was appointed guardian ad litem for certain minors and trustee ad litem for unborn and unascertained persons.

This first account of the trustee was filed on December 27, 1951, because of the death of the sister, Caro-

line T. Howland. Since then the two nephews, Llewellyn Howland and Edward Morris Howland, have also died. The trust continues for the benefit of the issue of the nephews and the surviving annuitant . . .

On December 4, 1929, Judge Van Dusen filed an adjudication confirming nisi the final account of the Fidelity-Philadelphia Trust Company, as executor. At that time the account value of the estate was $2,099,-597.16, based upon the inventory value. Included therein, and in the schedule of distribution filed July 12, 1930, and approved by the court September 22, 1930, were 36 shares of the capital stock of Fidelity-Philadelphia Trust Company, carried at a value of $1,015 per share, or a total value of $36,540. As of April 1957, the market value of the trust portfolio had increased to $3,393,902.50.

The guardian and trustee ad litem in his capable and comprehensive report pointed out that the trustees had suffered substantial losses in certain mortgages, German securities, investments in Southern mills, joint stock farm loan bonds and other securities. However, after thorough investigation, he reached the proper conclusion and recommends to the court that there should be no surcharge on those investments because the accountant exercised due care, diligence and proper judgment with regard to the retention or sale thereof. The auditing judge approves this recommendation of the guardian and trustee ad litem, and agrees with his observation that the overall administration of the trust estate has been competent and advantageous to the beneficiaries of the trust.

The guardian and trustee ad litem requests surcharge: (1) For retention of the 36 shares of the Fidelity-Philadelphia Trust Company, as to which there is a substantial paper loss; and (2) for purchase of 50 shares of its own stock for $15,896 and sale thereof for $15,746, resulting in a loss of $123. The accountant

has agreed to a surcharge for the loss of $123. Accordingly, the only question remaining is accountant's liability for surcharge for retention of the 36 shares of its own stock.

The agreed facts with respect to the 36 shares of accountant's stock are, inter alia, as follows: They were acquired by decedent on July 14, 1926; they were part of decedent's estate at his death and were included in the inventory of his estate at the appraised value of $1,015 per share; they were included in the balance awarded to Fidelity-Philadelphia Trust Company, as trustee, in the adjudication of Judge Van Dusen and were also included in the schedule of distribution which was approved by the court on September 22, 1930; in 1948 the stock was split 5 for 1; from January 1 to April 1, 1957, the highest value of the stock was $88 a share or a total of $15,840; and "At all times the financial reports, statistical information and market quotations relative to Fidelity-Philadelphia Trust Company and its capital stock had the continuous and careful study and attention of accountant's investment specialists. In the light of this information the sale or retention of Fidelity-Philadelphia Trust Company capital stock received regular, careful and constant consideration." The guardian and trustee ad litem concedes that in retaining the stock the accountant was not guilty of negligence or improper attention thereto. Paragraph 7 of the will provides as follows:

*"SEVENTH:* I authorize and empower my Executor and Trustee hereinafter named either *to hold without liability any of the investments of which I may die possessed,* or in its discretion to sell the same and reinvest the proceeds thereof, or any other funds coming into its hands as such Executor and Trustee, in such securities or other investments as to it shall seem best, without being limited to such as are usually termed 'legal securities'." (Italics supplied.)

The narrow question presented to the auditing judge for determination is whether a trustee is liable for surcharge for loss following retention of decedent-owned stock of the corporate trustee, where there appears in the will a general power of retention of decedent-owned investments, but no specific authorization to trustee to retain accountant's corporate stock, and there is no statutory authority therefor.

It is well settled that, in the absence of specific authority, the doctrine of undivided loyalty forbids a trustee to purchase or hold its own stock as an asset of a trust estate. The reason is obvious. No one with complete fidelity can serve two masters. Judicial decisions and text authorities are uniform in this position.

Former Chief Justice Stern in his dissenting opinion in Greenawalt's Estate, 343 Pa. 413, 425, stated:

"The question of the duty of the trustee with respect to the holding in trust of its own shares, however, goes beyond the question of negligence. The trustee, particularly in times of stress, cannot take an entirely disinterested attitude on the question whether it should sell or retain the shares. It has an interest in the maintenance of the market value of its shares, and is therefore subject to a temptation to retain the shares which it holds in trust, although it may be to the interest of the beneficiaries that the shares should be sold. The trustee ought not to put itself in a situation where its own interests may conflict with those of the beneficiaries. For this reason it seems clear that it is improper for a corporate trustee to make an investment in the purchase of its own shares, even though the purchase is not made from itself, and that it is improper for the trustees to retain such shares although it received them as original investments, *unless it is authorized to do so by the terms of the trust or by statute.*" (Italics supplied.)

In City Bank Farmers Trust Company v. Cannon, 291 N. Y. 125, 131, it is stated:

"The standard of loyalty in trust relations does not permit a trustee to create or to occupy a position in which he has interests to serve other than the interest of the trust estate. Undivided loyalty is the supreme test, unlimited and unconfined by the bounds of classified transactions. . . . Undivided loyalty did not exist after affiliation of the trustee and the bank because of the ownership by the trust of the shares of the Bank. The officers of the trustee responsible for the administration of the trust were under a duty with unremitting loyalty to serve both the interest of the Trust Company and the interest of the trust estate. These were conflicting interests insofar as the trust investment in the National City Bank shares required decision whether to hold or to sell the shares in a falling market. The sale of this large number of shares might have seriously affected the interests of the Trust Company by depressing the value of these shares in a rapidly deteriorating market. Consequently the trustee had conflicting interests to serve in deciding to sell or not to sell. . . . It is only by rigid adherence to these principles that all temptation can be removed from one acting as a fiduciary to serve his own interest when in conflict with the obligations of his trust. . . . The rule is designed to obliterate all divided loyalties which may creep into a fiduciary relationship and utterly to destroy their effect by making voidable any transactions in which they appear."

Professor Scott, in his monumental work 2 Scott on Trusts, (First Ed., 1939), 884, §170.15, states:

". . . it seems clear that it is improper for a corporate trustee to make an investment in the purchase of its own shares, even though the purchase is not made from itself, and that it is improper for the trustee to retain such shares although it received them as orig-

inal investments, *unless it is authorized to do so by the terms of the trust or by statute.*" (Italics supplied).

In the case of In re Trusteeship of Stone, 138 Ohio 293, 303, it is stated:

"Undivided loyalty being a primary obligation, the retention of its own shares in a trust presents the temptation and opportunity to the board of directors to use and manipulate such shares to advance its own interests or those of the corporation, with results which could prove detrimental to the trust and beneficiaries."

Of course, the prohibition against a corporate fiduciary purchasing or retaining its own shares of stock as a trust asset yields where there is express authority to do so in the trust instrument or in a statute. Such authorization in the trust instrument constitutes a waiver of the rule of undivided loyalty. This raises the question as to whether there was such express authority in the instant case. There is no such statutory authorization in Pennsylvania. The accountant contends that there is adequate express authority in the language of the will: "I authorize and empower my Executor and Trustee hereinafter named ... to hold without liability any of the investments of which I may die possessed." The guardian and trustee ad litem replies that this is general language, and that the only authorization which is adequate is express and specific authority to the accountant to hold its own stock in the trust estate.

If this were a case of first instance, the auditing judge would be inclined to adopt the position of the guardian and trustee ad litem and hold that it was necessary for the trust instrument to contain specific authority to empower the corporate trustee to hold its own stock. This is the rule that has been stated in several other jurisdictions: City Bank Farmers Trust Co. v. Taylor, 76 R. I. 129, 69 A. 2d 234 (1949) ; In re

Trusteeship of Stone, 138 Ohio 293, 34 N. E. 2d 755 (1941).

In City Bank Farmers Trust Co. v. Taylor, supra, the court stated, at page 135:

" . . . After observing that there was no '*specific* authority conferred to *retain* the bank stock' the court said: 'Our studied conclusion, applicable to the instant case, is that a corporate trustee cannot acquire its own shares of stock as an investment, or retain its own shares in a trust, without *express* authorization by the terms of the instrument bringing the trust into existence, or by provision of law.' . . .," and stated further at page 140, et seq.:

"We adhere to the rule of strict construction in such a case in favor of the trust. The power of the trustee should be established with the utmost clearness and not rest upon conjecture. The presumption of the law is against such investments and, in the absence of clear provision to the contrary, all doubts regarding the scope of the language upon which the claim for such a power is made must be received against the party making the claim. See Barker's Estate, 159 Pa. 518, 28 Atl. 365, 368. Following this rule, it has been well said that the language under review should be limited to its narrowest compass and should not be so construed as to create a situation which is abhorrent to the law. . . .

"On the whole, therefore, we are of the opinion that the construction which we have given to the language of the testator in the case at bar is consonant with the rule of construction to be followed in such cases and is more consistent with the fundamental objectives sought to be obtained by the undivided loyalty rule of the law of trusts than would be a more liberal construction in favor of the trustee. In our opinion the fidelity of trustees will be better assured and the integrity and security of trust estates better served by not countenancing

any relaxation of the undivided loyalty rule unless it clearly appears that the testator or settlor intended to exempt the trustee from that rule."

In re Trusteeship of Stone, supra, the court stated, at page 304:

"This item certainly confers broad powers of investment and broad discretionary powers in the management of the trust estates, but there is no *specific* authority conferred to *retain* the bank stock. Is the quoted item then sufficiently comprehensive to justify the retention of the stock by the trustee, which otherwise, in our view, would be wrongful?

"We are frank to confess that the problem has given us concern, and we have carefully and deliberately weighed the well-presented and ingenious arguments of counsel. Our studied conclusion, applicable to the instant case, is that a corporate trustee cannot acquire its own shares of stock as an investment, or retain its own shares in a trust, without *express* authorization by the terms of the instrument bringing the trust into existence, or by provision of law. Without such authorization, there is disregard for the duty of absolute faithfulness to the trust, because of the conflict which may and does on occasion arise between the personal interests of the trustee on the one hand and the interests of the trust and its beneficiaries on the other."

The doctrine of uberrima fides is so strong and the danger of divided loyalty is so ominous, especially in a falling stock market, that testator or settler might well be required to use express language to authorize his trustee to hold its own stock if he desires it to do so, e.g.: "I authorize the trustee to retain its own corporate stock as an investment in the trust estate." This would make certain that testator or settlor would have to give consideration to the divided loyalties involved and expressly authorize his corporate fiduciary to hold its own stock if testator or settlor so desired.

This would eliminate the danger of a general retention clause being included in a trust document, without the matter being called specifically to donor's attention.

Fortunately for the accountant, however, this is not a matter of first instance in Pennsylvania. It has been squarely ruled in Clay's Estate, 25 D. & C. 257 (1936) ; Greenawalt's Estate, 343 Pa. 413 (1931) ; and Glauser Estate, 350 Pa. 192 (1944).

In Clay's Estate, supra, the language of the will was: "I authorize my Executors and my Trustees or Trustee, in their discretion, to retain any of the investments or assets or real estate which I may own at the time of my death . . ." Mr. Justice Allan H. Stearne in an adjudication filed by him as a judge of this court, to which no exceptions were filed, decided that the quoted clause authorized the corporate trustee to retain its own stock and, therefore, there was no liability by accountant for the loss which followed. He stated, at page 265: " '. . . the trustee, having adequate authority under the will to retain these investments, will be liable to a surcharge only for a failure to study carefully the circumstances and conditions that controlled the value of the investments, or, if he has made such a careful study, for failure to act intelligently with respect thereto.' "

In Greenawalt's Estate, supra, the Supreme Court of Pennsylvania found a power of retention in the language of the will which authorized the executors to sell "all stocks, bonds, securities, or any other evidences of indebtedness which I may have at the time of my death; and to reinvest the same in other real estate or such securities as may be for the best interests of my estate; also to sell such real estate so purchased, and to assign any securities so purchased and reinvest the same as often as may be deemed by my executors advantageous to my estate." Loss resulted from the retention of stock of another bank which was merged

with the corporate fiduciary. Speaking for the court, Mr. Justice Linn, stated, at page 420: "There is no evidence of want of care in looking after these investments; as the executors had authority to retain investments, the burden of proof was on appellants."

Glauser Estate, supra, is precisely in point. There testator provided in his will: "I hereby authorize and empower my said Executors or Executor and Trustees or Trustee to hold and retain as parts of my estate and the trusts hereunder any securities or investment owned by me at the time of my decease . . ." Decedent during his lifetime was a director of the corporate fiduciary and owned 47 shares of its stock at his death. This stock was retained by the corporate fiduciary with resulting loss to the estate. The orphans' court refused to surcharge and this decision was affirmed by the Supreme Court, Mr. Justice Linn stating, at page 201: "We of course recognize the force of the objection against a fiduciary's holding and acquiring its own stock as a trust investment, but we must also recognize that the testator authorized his fiduciaries to do it. With respect to this item, also, the burden of proof was on the exceptants."

President Judge Van Roden in Catherwood Estate, 63 D. & C. 222 (1947), surcharged the instant corporate fiduciary for *investing* in its own stock, and the resulting loss therein. However, investment is different from retention. Therefore, this case is not in point.

It is noteworthy that other jurisdictions have come to the same conclusion as Pennsylvania reached in the cited cases: Robison v. Elston Bank & Trust Co., 113 Ind. App. 633, 48 N. E. 2d 181, 49 N. E. 2d 348 (1943); in re Ridings' Estate, 297 N. Y. 417, 79 N. E. 2d 735 (1948); In re Gillie's Will, 279 App. Div. 1132, 112 N. Y. S. 2d 581 (1952). Moreover, these decisions have received the approval of law review writers: 2 Scott on Trusts §170.15. (2d Ed. 1956) pages 1234, 1235; Scott,

"Retention of Its Own Stock by a Corporate Trustee", 57 Harvard Law Review 601 (1944). See 48 Michigan Law Review 1219 (1950); and 25 N. Y. U. Law Review 662 (1950). It is also to be noted that several States by statute have authorized retention by a trustee of its own corporate stock in such situations: 1951 Delaware Code Annotated Tit. 12, §3305; 1944 Kentucky Revised Statutes §386.025; Vernon's Annotated Missouri Statutes, §363.200.

The auditing judge is bound by the foregoing decisions of the Supreme Court of Pennsylvania. Under those decisions, the general power of retention contained in the will in the instant case authorized the accountant to retain its own corporate stock. It is conceded by all parties that accountant exercised due care and diligence with regard to the retention of that stock. Accordingly, the request for surcharge for accountant's retention of its own stock is refused. . . .

And now, to wit, November 4, 1957, the account is confirmed nisi.